**Stanley JACKSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Wayne A. MONROE, Appellant,**

v.

**UNITED STATES, Appellee.**

**LeRoy DOUGLAS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 10435, 10442 and 10614.**

District of Columbia Court of Appeals.

Argued May 12, 1977.

Decided Sept. 28, 1977.

Joseph J. Bernard, Washington, D. C., appointed by this court, for appellant Jackson.

Daniel Burke, Alexandria, Va., appointed by this court, for appellant Monroe.

Hugh O'Neill, Washington, D. C., appointed by this court, entered an appearance and adopted the briefs of co-appellants for appellant Douglas.

Richard H. Saltsman, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Eugene M. Propper, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and YEAGLEY, Associate Judges.

KELLY, Associate Judge.

Appellants were convicted by a jury of two counts of assault with a dangerous weapon and one count each of burglary

in the second degree and grand larceny.[1] The four issues raised on appeal[2] are (1) whether the trial court erred in refusing to declare a mistrial after appellant Jackson was cross-examined about court-ordered narcotics treatment, (2) whether the trial court erred in failing to instruct the jury on lesser included offenses of assault with a dangerous weapon and second-degree burglary,[3] (3) whether the jury poll procedure was error when the first juror polled answered "not guilty" to one of the counts and corrected himself immediately thereafter when asked the same question,[4] and (4) whether it was error to impeach appellant Monroe with a prior arrest for carrying a pistol without a license after he had denied ever carrying a gun.

The assault with a dangerous weapon counts were based upon an incident on May 4, 1975, after the three appellants went to the home of complainants Kenneth Montgomery and Michael Gregory allegedly to collect the $50.00 balance due Douglas on the sale of a leather coat to Montgomery for $100.00. The complainants testified that after some initial conversation, Gregory was tied up and made to lie on the dining room floor. Montgomery was brought from the second floor and ordered to sit in a chair while Jackson went to look for something to tie him up with and Monroe held a gun on each of them. They also claimed that two of their kitchen knives were brandished at them by appellants, one of whom was Jackson.[5] After ten minutes the two complainants freed themselves and began to wrestle with their assailants when they realized

their stereo equipment was being moved toward the door. Allegedly, an electronic calculator was taken from the house as the assailants left hurriedly in anticipation of the arrival of the police.[6]

Eleven days later, on May 15, the three appellants returned again to "collect" on the alleged debt. This incident was the basis of the burglary and grand larceny convictions. No one was at home so the appellants proceeded to remove the complainants' television and stereo equipment as "collateral" on the debt. Neighbors spotted the removal of these items from the complainants' yard and notified Gregory, who confronted the appellants in an alley. Monroe and Douglas escaped on foot, and Jackson drove away in an orange Volkswagen, the license tag number of which was recorded by Gregory and traced by police to Jackson. Monroe's fingerprints were found on the complainants' door and on a picture frame inside.

Montgomery and Gregory denied any transactions with Douglas concerning either a coat or narcotics. Monroe claimed that he used the gun in self-defense and to protect the other appellants when they were attacked with knives by the complainants.

## I

Appellant Jackson asserts that the fact that the trial court gave a cautionary instruction on the use of prior convictions shortly before he took the stand created an expectancy on the part of the jury that a prior conviction would be shown when in

1. D.C.Code 1973, §§ 22–502, –1801(b), and –2201, respectively.

2. Appellant Douglas has adopted the appellate arguments of appellants Monroe and Jackson.

3. The alleged lesser included offenses are simple assault, carrying a dangerous weapon, and unlawful entry. No request was made for these instructions and on the facts of this case the failure, sua sponte, to instruct on these issues is not plain error. *See Massey v. United States,* D.C.App., 320 A.2d 296 (1974).

4. This allegation of error is without merit. Obviously the juror had simply misstated himself and the court was correct in immediately clari-

fying the situation by repeating the question and admonishing the juror to listen carefully. The juror corrected himself before the poll continued and no pressure to conform was brought to bear upon the juror. *Compare Kendall v. United States,* D.C.App., 349 A.2d 464 (1975).

5. Jackson testified that the complaining witnesses had pulled the knives. The police found no knives at the scene.

6. The appellants had been charged with but were acquitted of the armed robbery and robbery. They contended that the calculator was thrown through a window during the melee.

fact Jackson had no prior convictions. However, the record reveals that the instruction was requested by the prosecutor following impeachment by two narcotics convictions of appellant Douglas, who preceded Jackson on the stand. Such an instruction, even though delayed until after the break between Douglas' and Jackson's testimony, was proper in its context and no error was committed.

Jackson further complains of the fact that on cross-examination the prosecutor questioned him at length about his familiarity with and use of heroin and marijuana and then asked:

Q. Now, sir, do you remember coming down after being arrested, coming to court?

A. Yes.

Q. You did come to court sometime after your were arrested?

A. Right.

Q. And as a result of that, didn't the Court find that you were using heroin at the time?

A. No, I wasn't using, I was off it. I wasn't using.

Q. Weren't you ordered, sir, ·as a result of tests in court to get treatment for using heroin?

[DEFENSE COUNSEL]: Your Honor, the Court please, may we approach the bench?

Government counsel argued that the cross-examination was proper since Jackson's trial counsel had posited in his opening statement that the complainants attacked the appellants because they were high on narcotics. Furthermore, defense counsel cross-examined Gregory and Montgomery about their use of narcotics and Jackson stated on the stand during cross-examination that he suspected that the complainants were "high" at the time of the May 4 confrontation. The trial court ruled that compelling this admission of court-ordered drug treatment was improper and ordered

the remarks stricken from the record. He refused to declare a mistrial, however, and allowed the prosecutor to question Jackson further as to his use of drugs without referring to court-ordered treatment.

■■■ We find no abuse of. the court's discretion. First of all there was no substantial prejudice from revelation of this information because both Jackson and Monroe admitted use of marijuana [7] and Douglas was impeached with two narcotics convictions. Therefore, the impact on the jury of the information that the court found treatment necessary was negligible. Secondly, use of narcotics is a proper subject of inquiry going to the credibility of the witness in his recollection of the events in question. *Durant v. United States,* D.C. App., 292 A.2d 157 (1972), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259 (1973).

## II

■■■ Appellant Monroe contends that the prosecutor improperly cross-examined him to reveal an arrest for possession of a pistol without a license and that this information prejudiced him before the jury.[8] We agree that it was error to allow this line of questioning over objection. The government has mistakenly relied upon *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), for the proposition that it was acceptable to contradict Monroe's statement on cross-examination that he never carried a weapon except on the date of the offense [9] in this manner. In *Walder,* the defendant, who was charged with four illegal narcotics transactions, stated on *direct* examination that he never sold narcotics or possessed them. On cross-examination the government had the defendant reiterate this assertion and then contradicted him in order to impeach his credibility, with questions about an arrest two years earlier for purchase and possession of heroin. That arrest had ended in dismissal of the

7. Jackson also admitted use of cocaine when the prosecutor resumed his cross-examination.

8. The arrest ultimately ended in an acquittal.

9. Monroe claimed that he was taking the gun to a girlfriend for her protection.

case when the court suppressed the physical evidence of the heroin capsule because it had been obtained through unlawful search and seizure. On appeal, the Supreme Court allowed the impeachment, but stressed the fact that the defendant himself opened the door because of his sweeping denial on direct examination. The Court specifically pointed out the contrasting case of *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), which disallowed introduction of similar tainted evidence from a previous indictment which the prosecutor "tried to smuggle . . . in" on cross-examination by asking the accused the broad question: " 'Did you ever see narcotics before?' " *Walder v. United States, supra,* 347 U.S. at 66, 74 S.Ct. at 356 (footnote omitted). *Agnello* is the analogous case to these facts. Furthermore, as we have pointed out, the mere fact of an arrest is of no probative value as to the guilt or innocence of the person arrested. *See United States v. Engram,* D.C.App., 337 A.2d 488, 492 (1975), *cert. denied,* 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1976), and *United States v. Maynard,* 155 U.S.App.D.C. 223, 476 F.2d 1170 (1973).

■ Although we find this line of inquiry erroneous, we conclude that the error was ultimately harmless. There was no issue about the fact that Monroe had a gun in his possession at the time of the offense, and the impact of this information upon the jury in denigration of Monroe's credibility was unlikely to have determined the outcome reached by the jury in view of the weight of the other evidence against him. *Wacksman v. United States,* D.C.Mun.App., 175 A.2d 789 (1961).

The judgments of conviction on appeal are

*Affirmed.*