**Karl D. WARD, a/k/a Preston Ward, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11679.**

District of Columbia Court of Appeals.

Argued Dec. 8, 1977.

Decided May 2, 1978.

Richard A. Rosen, Public Defender Service, Washington, D. C., for appellant. Silas J. Wasserstrom, Public Defender Service, Washington, D. C., also entered an appearance for appellant.

Joel S. Perwin, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Mark H. Tuohey, III, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

Appellant was convicted, after trial by jury, of assault with intent to commit robbery while armed and carrying a pistol without a license. D.C.Code 1973, §§ 22–501, –3202, –3204. He asserts that the trial court erred in permitting the prosecutor to elicit from him, then argue to the jury, his testimony that his accomplice in a prior offense had been the same person as his accomplice in the instant offenses. Because we reverse on this ground, we need not reach appellant's other assignments of error.

The record reveals the following development of testimony at trial. The victim in this case, Mr. Fletcher, testified, *inter alia*, that appellant and one Faulkner (who was not tried in this case) approached him at his apartment during the evening of February 10, 1976, and asked for a loan of money. When Fletcher refused the loan, appellant drew a gun from his pocket and demanded money. Fletcher wrestled the gun from him and, after they had fled, called the police. Although he did not at that time know his assailants' names, he testified that he had seen them both on several occasions in the two months before the assault and had given them a ride on one of these occasions. Fletcher further testified that he saw appellant and Faulkner on the street the next day and summoned a police officer to arrest them. Another police officer testified that appellant, having been advised of his rights, told him that he (appellant) had met Faulkner only two days earlier, *i. e.*, the day before the commission of the instant offenses.

Appellant testified that he had known Faulkner since 1972 and had seen him during a period of two weeks in October 1975, from October 9 to 22. But, he testified, he had never seen Fletcher before and could not have seen him two months before the instant offenses because he was incarcerated from October 22 until February 9 as a result of a burglary charge. (Upon this testimony the court, *sua sponte*, instructed the jury that evidence of the prior crime could not be considered as tending to show guilt of the instant offenses.) He further testified that he was with Faulkner the night of the instant offenses but that another person accompanied Faulkner to Fletcher's apartment while he (appellant) waited innocently in an automobile.

Before the prosecutor began cross-examination of appellant, defense counsel stated to the court that she was unfamiliar with the facts of the prior burglary but that she "would ask that [the prosecutor] not go into the details of the burglary in this matter." The prosecutor represented that he intended to do so, that he would lay a proper foundation, and that the "burglary has to do with [this case] in terms of where it was committed and in terms of his association with Mr. Faulkner." The trial judge responded that he would "take the questions as they come."

During cross-examination of appellant, the following colloquy occurred:

Q. During the month of October 1975, you were with Mr. Faulkner in the Mt. Pleasant area, weren't you?

A. One day.

Q. And what day was that?

A. October the 22nd, on the day of my arrest in the burglary case.

Q. That's the only time you were with him?

A. Yes, it is.

Q. Sir, isn't it a fact that you and Gregory Faulkner were arrested for a burglary on October 10, at 1669 Columbia Road?

A. Let me correct you. October 13th.

Q. You just said October 22 was the only time you were with Gregory Faulkner?

A. It was supposed to have been October 13th that the burglary was committed.

Q. And that's the burglary that you were convicted of, isn't that correct?

A. Yes, it is.

\* \* \* \* \* \*

Q. And you also heard [Mr. Fletcher] testify that you, Karl Ward, together with Gregory Faulkner, had been to his apartment before, didn't you?

A. Yes, I did.

Q. And this is the same Gregory Faulkner that you knew and were arrested with in October of 1975, isn't it?

A. Yes.

These circumstances were, at the close of the trial, argued to the jury by the prosecutor:

[Y]ou may consider, in determining the credibility . . . to be given to the testimony of a witness, whether or not that witness has ever been convicted of a crime. Mr. Ward has indicated that he was, and later indicated that was a crime committed in Mt. Pleasant with Gregory Faulkner.

■ When a criminal defendant testifies in his own defense, his testimony is generally subject to impeachment by the use of his prior convictions for the purpose of showing him as lacking credibility. D.C. Code 1973, § 14–305(b)(1). While the fact of conviction is so admissible, the facts of the crime are not admissible unless, and to the extent that, those facts are independently relevant to the issues at trial. *Wooten v. United States*, D.C.App., 285 A.2d 308, 309 (1971) (motive or intent); *Fairbanks v. United States*, 96 U.S.App.D.C. 345, 347, 226 F.2d 251, 253 (1955) (circumstances of the offense). But the facts of the prior crime are not admissible to prove a general disposition to commit crime or a specific crime. *Wooten, supra*; *Drew v. United States*, 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964):

[I]t is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged.

The government argues that evidence of appellant's prior criminal association is independently relevant as [1] impeachment "of statements made by appellant at trial, [2] support for the credibility of a Government witness [Fletcher] whose testimony had been expressly challenged, and [3] direct evidence of appellant's culpability in the form of proof of his consciousness of guilt in lying to the police."

■ The first of these grounds is arguably sound. Appellant stated that he had seen Faulkner in the Mt. Pleasant area "one day" in October, the 22nd, and that that was the only time he was with him. This assertion was then impeached by eliciting from appellant the admission that he had also been with Faulkner on the 13th of October, the day of the burglary. The facts of a prior crime may ordinarily be used to impeach a criminal defendant by specific contradiction. *See Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). In light of our ultimate holding in this case, we need not reach appellant's

argument that our decision in *Jackson v. United States*, D.C.App., 377 A.2d 1151 (1977),* precludes cross-examination to elicit such testimony. We assume, rather, that the instant case is distinguishable from *Jackson* in that here the impeached statement, "one day," was volunteered and not in necessary response to the cross-examination. Upon this assumption, the facts of the prior crime were admissible as well as probative unless the potential impermissible prejudice engendered by such evidence outweighed its probative value. *Drew v. United States, supra*, 118 U.S.App.D.C. at 15–16, 331 F.2d at 89–90.

■ The second ground is support for Fletcher's testimony that he had seen appellant and Faulkner in the Mt. Pleasant area two months before the date of the instant offense, February 10, 1976. Fletcher's testimony was not supported as to time, because it put the meeting in late November or early December, while appellant was questioned only about October. Cross-examination did bring out that appellant had been in the Mt. Pleasant area with Faulkner, but whether this occurred on October 22 or October 13 is wholly irrelevant to Fletcher's testimony.

The third ground was as proof that appellant lied to the police. But appellant's cross-examination in no sense aided this proof. Appellant did not admit that he made the alleged statement to the police, nor did he deny that he knew Faulkner long before the occurrence of the instant crime. Appellant was impeached, if at all, by the already admitted testimony of the police officer. Assuming that the purpose of cross-examination was to clarify appellant's reasons for allegedly attempting to disassociate himself from Faulkner—*i. e.*, to show consciousness of guilt—then the only relevant evidence would be that tending to show consciousness of guilt of the instant offenses. Use of evidence of his association with Faulkner in the prior offense to show consciousness of guilt of the instant offenses is exactly the use prohibited by *Drew*.

Because the facts of the prior crime were probative to the extent that they tended to impeach appellant's statement that he had been with Faulkner in Mt. Pleasant only "one day" in October 1975, the evidence was admissible unless the potential impermissible prejudice to the accused outweighed its permissible probative value. *Drew v. United States, supra*.

The probative value of the evidence is clear: the prosecutor elicited from appellant an admission that his statement, under oath, that he had been with Faulkner in Mt. Pleasant only one time in October was not true. While this was impeachment on a collateral matter since it did not tend to prove any element of the government's case, it was proved not by extrinsic evidence but by appellant's own testimony. The potential for impermissible prejudice to appellant, however, was also great. Evidence that appellant was Faulkner's accomplice in a prior burglary may have led the jurors to speculate that, because Faulkner was a participant in the instant offenses, appellant was again Faulkner's accomplice.

■ We need not decide, however, whether the value of this permissible use outweighed its potential for undue prejudice, for the prosecutor's later comment upon this evidence can only be viewed as comment going to its forbidden value, not its proper probative value. The last question of the above-quoted cross-examination, in which the prosecutor repeats the evidence that appellant had been arrested with Faulkner in October 1975, was completely disassociated from its only permissible use—*i. e.*, impeachment of his testimony. Rather, the context of the question was the

---

* In *Jackson* we recognized the holding of *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), that otherwise improper evidence may not be introduced to impeach a defendant's statement elicited for the first time on cross-examination. *Cf. Walder v. United States, supra* 347 U.S. at 66, 74 S.Ct. 354.

correctness of Fletcher's identifications of appellant and Faulkner as the perpetrators of the instant offenses, with the result that the facts of the prior crime were given the color of additional identification evidence. The prosecutor's argument to the jury, while not, in context, necessarily suggestive of the undue prejudicial value of this evidence, was again unrelated to its only permissible use. The argument that appellant's prior conviction of a crime may be considered by the jury in assessing credibility was proper. But the additional reference to the facts of the crime which resulted in conviction was not, for the permissible use of these facts (that appellant lied on the stand) was never argued to the jury. We cannot assume that these comments were ignored by the jury or considered irrelevant where their relevance has not been limited by context or argument. And where the government has used otherwise admissible evidence for an impermissible purpose, we need not engage in balancing competing interests, for the government has no valid interest in an impermissible use of evidence.

██ The government argues, however, that the evidence of the prior crimes did not unduly prejudice appellant because appellant had already indicated that he had committed the prior crime with Faulkner. Appellant had testified on direct examination that he was in jail from October 22, 1975, until February 9, 1976, and that he was subsequently convicted of burglary, the charge for which he was jailed. Appellant's purpose in so testifying was to preempt the foreseeable impeachment by the government and to establish that he could not have been seen by Fletcher two months prior to the instant offenses. *See Kitt v. United States*, D.C.App., 379 A.2d 973, 975 (1977). His prior criminal association with Faulkner was not elicited at this time. Later in his testimony, after describing the events of the night of these offenses in considerable detail, he testified concerning his statement to the arresting officer: "I had met the codefendant—my codefendant

in court, the same day. I told him [the officer] that." From this testimony, the government argues, the jury was aware that Faulkner and appellant were accomplices in the burglary.

The government's argument rests upon a number of inferences. First, the jury would have had to infer that the term "codefendant" referred to appellant's codefendant in a prior case, not this one. Second, assuming that inference, the prior case would have had to have been the burglary of which appellant was convicted. Third, assuming both inferences, the jury would still have had to infer that appellant's codefendant in the burglary was also his codefendant in this case, the ultimate inference. Such reasoning is speculative at best. And while both appellant's direct testimony and the testimony elicited on cross-examination were potentially but only speculatively prejudicial, it was the prosecutor's later comments that assured their forbidden impact. We will not, therefore, speculate that the defense's own evidence made the government's harmless.

██ The government also argues that the failure of appellant's counsel to object to the prosecutor's comments upon this evidence rendered the error unreviewable. *Balkney v. United States*, D.C.App., 225 A.2d 654, 655 (1967). Appellant's counsel did, however, object generally to any use of the facts of the prior crime, and we conclude that, in this case, that objection sufficed. The facts of a prior crime are generally inadmissible at trial. *Drew v. United States, supra.* It is the exception to this rule that permits admission for purposes such as proof of motive, opportunity, or intent. But that exception is subject to the trial court's discretion, by which it must weigh the probative value of the evidence for its admissible purpose against the potential improper prejudice to the accused. When, therefore, upon appellant's objection, the prosecutor indicated his intent to use this evidence, it was incumbent upon him to proffer a proper and probative purpose in

order that the trial court might have exercised that discretion. *See United States v. Bailey,* 164 U.S.App.D.C. 310, 505 F.2d 417 (1974). The proffer at the time of objection that the evidence was relevant "in terms of where [the prior crime] was committed and in terms of [appellant's] association with Mr. Faulkner" at the time of the prior crime was, at best, irrelevant and, at worst, evidence tending to prove guilt by association. That appellant would subsequently volunteer a statement arguably impeachable by this evidence afforded no basis for the trial court's exercise of discretion since that ground was neither known nor proffered.

Objection having been made to preclude the potential prejudice, moreover, we cannot say that later failures to object constituted the type of "conscious tactical decision" described in *Miles v. United States,* D.C.App., 374 A.2d 278, 283 (1977), where objection had never been made. While it is a tactical decision not to object in order not to highlight an impermissible purpose, appellant had already objected to the impermissible purpose for which this evidence was used. Where, as here, the trial court had already declined to rule on appellant's objection without a permissible use having been proffered by the government, we cannot say that further objection was required. *See* McCormick on Evidence § 52 at 118 (2d ed. 1972) and cases and works cited therein. *Cf. Skiskowski v. United States,* 81 U.S. App.D.C. 274, 279, 158 F.2d 177, 182 (1947).

▇▇ Finally, the government argues that the error in this case was harmless. The error was harmless only if we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). In making this judgment, "[t]he decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to miti-

gate the effects of the error." *Gaither v. United States,* 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969). The issue affected by the error was appellant's identity, virtually the only issue contested at trial. The government's only evidence of identity was Fletcher's testimony, which was impeached by appellant's testimony that he (appellant) was in jail when Fletcher claimed to have seen him prior to the instant offenses. Fletcher also testified that he had described appellant to the police as wearing a dark blue or black leather jacket. Appellant and other defense witnesses testified, however, that appellant was wearing a thin, light blue jacket at the time of the offenses. Although the usual cautioning instructions were given in the court's charge to the jury, we cannot, on balance, say that "the judgment was not substantially swayed" by the impermissible use of this evidence.

*Reversed and remanded for a new trial.*

