Tyrone T. WILLIAMSON, a/k/a Tyrone
T. Williams, William B.
Brown, Appellant,

v.

UNITED STATES, Appellee.

No. 79–1177.

District of Columbia Court of Appeals.

Argued Jan. 28, 1981.

Decided May 11, 1982.

---

Ellen Sue Shapiro, Washington, D. C., appointed by the court, for appellant. Charles Abernathy, Washington, D. C., and D. Stephenson Schwinn, Student Counsel, were on the brief.

Ronald Dixon, Asst. U.S. Atty. with whom Charles F. C. Ruff, U.S. Atty. at the time the case was argued, John A. Terry, John R. Fisher, and William J. O'Malley, Jr., Asst. U.S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN and NEBEKER, Associate Judges, and GALLAGHER, Associate Judge, Retired.*

GALLAGHER, Associate Judge, Retired:

In this case, the government filed a multicount indictment charging appellant with one count of kidnapping (D.C.Code 1973, § 22–2101); four counts of rape (*id.*, § 22–2801); four counts of sodomy (*Id.*, § 22–3502); and one count of assault with a dangerous weapon (*id.*, § 22–502). On motion by appellant's counsel at the close of the government's case, the court acquitted appellant on one count of rape and one count of sodomy. The case then went to the jury on the remaining eight counts. The jury returned verdicts of not guilty on the counts charging kidnapping, rape, and sodomy, and a verdict of guilty on the count charging assault with a dangerous weapon.

Appellant raises three basic issues on appeal. Appellant's first and primary contention is that the government failed to introduce sufficient evidence to support a conviction for assault with a dangerous weapon. Appellant's second argument is that the prosecutor substantially prejudiced appellant by eliciting complainant's testimony that she feared appellant had a gun and by improperly exploiting this testimony in his closing argument. He asserts that her testimony relating to the gun was irrelevant to the crime charged in the indictment—assault with a dangerous weapon (umbrella with a copper pipe attached) [1]—and was a likely cause of prejudicial jury confusion during their deliberations on whether the umbrella with the copper pipe attached was a "dangerous weapon." Finally, appellant argues that the trial judge abused his discretion and prejudiced appellant by admitting evidence of appellant's alleged flight from this jurisdiction prior to trial.

We conclude the evidence is sufficient to support a conviction for assault with a dangerous weapon. Finding no other reversible error, we affirm appellant's conviction.

Appellant's first argument is that the government failed to introduce sufficient evidence to support a conviction for assault with a dangerous weapon. Specifically, he asserts that the government failed to introduce any direct evidence that the weapon in this case—an umbrella with a copper pipe attached—was a "dangerous weapon" within the meaning of § 22–502 of the District of Columbia Code. In connection with the sufficiency of the evidence argument, appellant also urges this court to draw distinctions between assaults with weapons that are dangerous "per se", such as pistols and daggers, and assaults with other objects not designed to be dangerous weapons, but which can be used as such. Although both simple assault and assault with a dangerous weapon have been denominated as general intent crimes, appellant urges that where the weapon is not dangerous "per se," this court should require the government to prove a specific intent to cause physical injury to the victim, or an attempted battery. In the alternative, he urges this court to require the trial court sua sponte to instruct the jury on the lesser included offenses of simple assault if the weapon used in the assault is not a dangerous weapon "per se."

---

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. Actually, there were multiple counts regarding four distinct crimes.

■ The court has not previously drawn distinctions between weapons that are dangerous "per se" and other dangerous weapons. We decline to draw such distinctions in this case. An examination of the evidence and of the precedents in this jurisdiction establishing the elements of assault and the kinds of objects that may be deemed "dangerous weapons" under § 22–502 of the D.C.Code, requires us to reject appellant's sufficiency of the evidence argument.

■ For the government to prove assault with a dangerous weapon, it must prove the elements of simple assault plus the crucial fourth element—that the defendant committed an assault "with a dangerous weapon." To sustain a conviction, the government must prove each of these elements beyond a reasonable doubt. *See Sousa v. United States*, D.C.App., 400 A.2d 1036, 1044, *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979).

■ The simple assault provision of the District of Columbia Code (§ 22–504) applies to whomever "unlawfully assaults, or threatens another in a menacing manner." In an early case, the conduct prohibited by this section was described as:

> [An] attempt with force or violence to do a corporal injury to another; and may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person. [*Guarro v. United States*, 99 U.S.App.D.C. 97, 99, 237 F.2d 578, 580 (1956), quoting *Patterson v. Pillans*, 43 App.D.C. 505, 506–07 (1915).]

Later cases have construed § 22–504 and *Guarro v. United States, supra*, and have established that, despite historical distinctions between the criminal and the tort concepts of assault, criminal assault in the District of Columbia encompasses such conduct as could induce in the victim a well-founded apprehension of peril. *See Anthony v. United States*, D.C.App., 361 A.2d 202, 204–05 (1976). *See generally* W. LaFave & A. Scott, *Criminal Law* § 82, at 611 (1972); R. Perkins, *Criminal Law* 116–22 (2d ed. 1969). Under this expanded concept of common law criminal assault, the focus is not on the defendant's actual ability or specific intent to inflict the threatened harm, but rather the focus is on the defendant's apparent ability to accomplish the threatened injury. *See Sousa v. United States, supra* at 1044.

■ Thus, there are three essential elements which constitute the criminal offense of assault under § 22–504 and which are necessary elements of assault with a dangerous weapon under § 22–502. First, there must be an act on the part of the defendant; mere words do not constitute an assault. *See In Re D.W.J.*, D.C.App., 293 A.2d 268, 269 (1972). The act does not have to result in injury, *McGill v. United States*, 106 U.S.App.D.C. 136, 138, 270 F.2d 329, 331 (1959), *cert. denied*, 362 U.S. 905, 80 S.Ct. 615, 4 L.Ed.2d 555 (1960); it can be either an actual attempt, with force or violence, to injure another, or a menacing threat, which may or may not be accompanied by a specific intent to injure, on the part of the defendant. *See Sousa v. United States, supra; Parker v. United States*, 123 U.S.App.D.C. 343, 346, 359 F.2d 1009, 1012 (1966).[2] Secondly, at the time the defendant commits the act, the defendant must have the apparent present ability to injure the victim. *See Anthony v. United States, supra.*[3] Finally, at the time the act is committed, the defendant must have the intent to perform the acts which constitute the assault. *See Sousa v. United States, supra. See also Pino v. United States*, 125 U.S.App. D.C. 225, 226 n.1, 370 F.2d 247, 248 n.1

---

2. Decisions of the United States Circuit Court for the District of Columbia, which predate February 1, 1971, are binding on this court. *M.A.P. v. Ryan*, D.C.App., 285 A.2d 310 (1971).

3. In *Anthony*, we stated that, although the question whether the defendant's conduct, ac- tually produced fear in the victim is relevant, "the crucial inquiry remains whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Id.* at 206.

(1966), *cert. denied*, 387 U.S. 922, 87 S.Ct. 2038, 18 L.Ed.2d 977 (1967).

To prove an assault with a dangerous weapon, the government must prove each of the elements of assault plus a fourth, crucial element—that the assault was committed with a dangerous weapon. *See Sousa v. United States, supra*. Assault with a dangerous weapon carries with it more stringent penalties than the simple assault statute, and these penalties are imposed as "a practical recognition of the additional risks posed by use of the weapon." *Parker v. United States, supra*, 123 U.S. App.D.C. at 346, 359 F.2d at 1012 (footnote omitted). The "gist of the crime" of assault with a dangerous weapon, then, "is found in the *character of the weapon* with which the assault is made." *Id.* (emphasis in original) (*quoting Goswick v. State*, 143 So.2d 817, 820 (Fla.1962)). *Cf. Scott v. United States*, D.C.App., 243 A.2d 54, 56 (1968) (Under § 22–3204, prohibiting the carrying of concealed weapons, a "dangerous weapon" has been defined as one "*likely* to produce death or great bodily injury by the use made of it." Footnote and citations omitted; emphasis in original.)

Some weapons, under appropriate circumstances, are so clearly dangerous that it is prudent for the court to declare them to be such, as a matter of law. Included in this class are rifles, pistols, swords, and daggers, when used in the manner that they were designed to be used and within striking distance of the victim. Whether an object or material which is not specifically designed as a dangerous weapon is a "dangerous weapon" under an aggravated assault statute, however, is ordinarily a question of fact to be determined by all the circumstances surrounding the assault. *See generally* 2 C. Torcia, Wharton's Criminal Law § 200 (14th ed. 1979). The trier of fact must consider whether the object or material is known to be "*likely* to produce death or great bodily injury" in the manner it is used, intended to be used, or threatened to be used. The jurors' knowledge of the dangerous character of the weapon used generally can be based on "familiar and common experience." *See Parker v. United States, supra*, 123 U.S.App.D.C. at 347, 359 F.2d at 1013.

This court has set out the elements of assault with a dangerous weapon many times. We have held that the government need not prove an attempted battery or a specific intent to injure and that the question of whether an object is a dangerous weapon is for the jury to consider and decide. We have never drawn distinctions between dangerous weapons "per se" and other dangerous weapons. We, therefore, reject appellant's argument that the government must prove an attempted battery in every case where an assault is not committed with a weapon that is dangerous "per se." Thus, the appropriate inquiry for the jury is, as it has been in the past: (1) did the defendant commit an assault—that is, was his threatening act coupled with an apparent ability to injure the victim; and (2) did he commit that assault with a dangerous weapon?

We turn now to the evidence elicited in this case, and we review appellant's sufficiency of the evidence argument, mindful that an appellate court will not overturn a conviction on grounds of sufficiency if the evidence presented at trial reasonably permits a finding of guilt beyond a reasonable doubt. *See, e.g., Sousa v. United States, supra* at 1043; *Byrd v. United States*, D.C.App., 388 A.2d 1225, 1229 (1978). In this case, the government elicited testimony from the complaining witness that appellant had intimidated her by threatening her and telling her she would not be allowed to leave his room. According to the complainant's testimony, appellant grabbed an umbrella with a metal bar attached to it, pointed it at her, and told her, "You see this, I'm going to use this, you're going to do as I tell you to do." She testified that she was frightened. She also testified that the appellant hit and bruised her arm, although she did not indicate that he did this with the umbrella and pipe attachment. A doctor who examined her after the alleged rape and assault testified that she had a small bruise on her upper

left arm. The umbrella with the pipe attached was exhibited in court, and the jury had ample opportunity to view the instrument and consider its dangerous character. The fact that the government did not introduce expert testimony concerning the seriousness of injuries that such a weapon could inflict does not preclude a jury from reasonably concluding that the weapon was "dangerous." The dangerous nature and use of the object can be evaluated on the basis of the "familiar and common experience" of the jurors. *See Parker v. United States, supra,* 123 U.S.App.D.C. at 347, 359 F.2d at 1013. There was, therefore, sufficient evidence upon which a reasonable jury could conclude that appellant committed an assault with a dangerous weapon.[4]

Appellant's second argument is that the prosecutor improperly elicited testimony concerning a gun which the complainant feared was in the possession of appellant and subsequently exploited this testimony in closing argument to the substantial prejudice of appellant. Appellant contends this testimony was totally irrelevant, and the only conceivable purpose for the prosecutor's reference to the gun was to arouse the jury's prejudice against appellant.

■ In this case, appellant's attorney did not allege prosecutorial misconduct below and did not object to the complainant's testimony concerning the gun on relevancy grounds.[5] Appellant's counsel made no objection to the prosecutor's references to the gun in his closing argument. On appeal, therefore, we will not reverse unless the allegedly prejudicial testimony and closing argument constitute "plain error" affecting substantial rights of appellant. Super.Ct. Cr.R. 52(b). *See Tuckson v. United States,* D.C.App., 364 A.2d 138, 141–42 (1976); *Lloyd v. United States,* 333 A.2d 387, 390–91 (1975). Moreover, the allegedly objectionable testimony,[6] although irrelevant to

---

4. In connection with appellant's sufficiency of the evidence argument, appellant asserts that the trial court's failure to instruct the jury on the lesser included offense of simple assault constitutes reversible error. Appellant concedes that no such instruction was asked and requests this court to require a sua sponte instruction on the lesser included offense of simple assault whenever an assault is committed with a weapon that is not a dangerous weapon "per se." We reject appellant's argument and hold that, in this case, the trial court's failure to instruct the jury on the lesser included offense of simple assault did not constitute "plain error." Super.Ct.Cr.R. 52(b). *See Jackson v. United States,* D.C.App., 377 A.2d 1151, 1153 n.3 (1977); *Massey v. United States,* D.C.App., 320 A.2d 296, 300 (1974).

5. Just prior to the complainant's testimony concerning her fear of a gun which she thought appellant possessed, the record indicates appellant's counsel made a very general objection that the prosecutor was asking improper, leading questions on direct examination. The objection was not based on relevancy grounds. On appeal, appellant argues that this testimony was irrelevant and improperly elicited. It is settled, however, that a party objecting to evidence must make known to the court and opposing party the specific portion of the testimony that is objectionable and the precise ground on which the party is basing his objection. Grounds not raised in trial court will not require reversal on appeal, absent "plain error." *See, e.g., Tuckson v. United States, supra* at 142; *Firestone Tire & Rubber Co. v. Hillow,*

D.C.Mun.App., 65 A.2d 338, 340 (1949). *See generally* C. McCormick, *Evidence* § 52, at 117 (2d ed. 1972).

6. The objectionable testimony was elicited in the following manner:

Q. Let me stop you for just a moment. When you walked to the store, did you walk alone?

A. No, he went with me.

Q. Was there anyone else with you?

A. No people, just passing people.

Q. Did you say anything to anyone as you were walking to the store?

A. No, I wasn't supposed to say nothing to nobody.

Q. Did you ever ask for help?

A. One of the fellows—I couldn't read lips.

Q. And why didn't you just run from him?

A. He told me if I'd run, he going to shoot me.

Q. Did you ever see a gun?

A. No, but I always saw him with that mattress up and putting something down his bosom, and little red paper, and I often wondered what was that.

Q. What did you think it was?

A. I don't know.

Q. What did you think it was?

A. To me, I thought maybe something he hurt me with, like a gun or something.

Q. Did you go to the store?

A. We went to the store and I went around the counter and he was at the counter

the charge of assault with a dangerous weapon, was relevant to the kidnaping charge[7] which appeared in the indictment. Thus, the prosecutor did not focus on the testimony relating to the gun in order to confuse the jury. Moreover, the plain fact is appellant was acquitted, not convicted, of the charges to which the questioned testimony was relevant.

Finally, the prosecutor made clear in his closing argument that it was the "pipe," that is, the umbrella with the pipe, and not the gun, which constituted the dangerous weapon,[8] and the trial judge instructed the jurors to determine whether the umbrella with the pipe attached was a dangerous weapon.

On the facts of this case, it was not error to elicit testimony concerning complainant's fear of a gun or to reiterate this testimony in the government's closing argument. The trial court's failure to exclude the testimony does not require reversal.

Appellant's final argument is that the trial judge abused his discretion and prejudiced appellant by admitting, over objection, evidence of appellant's alleged flight from this jurisdiction prior to trial. In support of this argument, appellant contends that there was undisputed evidence before the judge that the bail agency sent appellant an arraignment notice which specified the wrong date, and that it was unclear whether appellant ever received a court notice specifying the correct arraignment date. Thus, because of this lack of proper notice, appellant would have us find that appellant's disappearance after he was indicted and released on bond has little probative value on the question of his guilt, and that any probative value was outweighed by the possible prejudicial impact such testimony would have on the jury. Appellant's argument is without merit.

It is universally conceded that an accused's flight or disappearance is admissible as evidence of consciousness of guilt. See generally 2 J. Wigmore, Evidence § 276(4) (1979). This court previously has held that such testimony is admissible. See, e.g., In Re T.T.B., D.C.App., 333 A.2d 671, 673 (1975). In light of the strong impact such testimony might have, however, we have required the trial court to carefully consider the facts in each case and to determine whether the probative value of such testimony is outweighed by the potential for prejudicial impact. We have stressed that "[a] flight instruction is improper unless the evidence reasonably supports the inference that there was flight or concealment and that the defendant fled because of consciousness of guilt and actual guilt of the crime charged." Scott v. United States, D.C.App., 412 A.2d 364, 371 (1980).

In this case, the evidence reasonably supports the inference that appellant fled because of consciousness of guilt. Appellant

___

with a man, and so I went around like this, between the aisle, and he come around that-a-way.

Q. Why didn't you tell somebody in the store?

A. If I had told somebody or somebody start running and he had a gun, he would try to shoot, because I had in my mind running, something said don't run, you might get hurt. I didn't want anybody to get hurt on account of me, and that's the reason I didn't run.

7. The essence of the crime of kidnapping is the involuntariness of the seizure and detention. Chatwin v. United States, 326 U.S. 455, 464, 66 S.Ct. 233, 237, 90 L.Ed. 198 (1946). Thus, the prosecution used the testimony relating to appellant's alleged assertion that he possessed a gun and complainant's belief that he had a gun to demonstrate or to explain why she did not run from appellant when presented with an apparent opportunity to escape. It would also be relevant to the rape charge.

8. In his brief, appellant makes reference to "the prosecutor's baseless assertion in closing argument" that "[i]f anyone is struck with this pipe, they could be seriously injured." A prosecutor is entitled to make reasonable comments on the evidence and draw such inferences from the testimony as will support his theory of the case. Tuckson v. United States, D.C.App., 364 A.2d 138, 142 (1976). The judge instructed the jury that arguments of counsel do not constitute evidence and that the jury was required to determine whether the weapon was dangerous. Nothing the prosecutor said rises to the level of error.

admitted that he was aware of the charges.[9] He was indicted in March 1977, and he was released on bond into the third party custody of Bonabond. Appellant admitted that he left the District of Columbia in April 1977, without advising Bonabond that he was leaving, and traveled to Tennessee. Appellant had an opportunity to explain the reason for his absence from this jurisdiction. At the close of the case, the court instructed the jury on flight and the role of the jury generally, and specifically instructed the jury that there was "sharp dispute in the testimony as to whether there was flight in fact in this case." Under these circumstances, the trial court did not abuse its discretion in admitting the testimony, and instructing the jury on flight.

We conclude that appellant's conviction for assault with a dangerous weapon should be

*Affirmed.*

---

**9.** As previously related, he stood charged with major crimes, *viz.*, kidnapping, rape, sodomy, and assault with a dangerous weapon.