*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-971

ESPERANZA CONTRERAS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DVM-768-13)

(Hon. Fern Flanagan Saddler, Motions Judge)
(Hon. Michael Ryan, Trial Judge)

(Argued September 17, 2014               Decided August 6, 2015)

*Gregory W. Gardner* for appellant.

*Lauren R. Bates*, Assistant United States Attorney, for appellee. *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief for appellee. *Vincent H. Cohen, Jr.*, Acting United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, *Ann K. H. Simon*, and *Lauren R. Bates*, Assistant United States Attorneys, were on the supplemental brief for appellee.

Before WASHINGTON, *Chief Judge*, MCLEESE, *Associate Judge*, and BELSON, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant Esperanza Contreras challenges her conviction for assaulting her daughter, in violation of D.C. Code § 22-404 (a)(1)

(2012 Repl.).  Ms. Contreras argues that the trial court erroneously denied her request for a jury trial and that the evidence was insufficient to support her conviction.  We affirm.

**I.**

The government's evidence at trial indicated the following.  Ms. Contreras's sixteen-year-old daughter left Ms. Contreras's home with a friend.  When they returned, Ms. Contreras was "very mad," because she thought that her daughter and her daughter's friend had been gone too long and because her daughter had not answered Ms. Contreras's telephone calls.  Ms. Contreras questioned her daughter about arriving home late, which led to an argument.  During the argument, Ms. Contreras slapped her daughter in the face, causing her daughter's nose to bleed.  Ms. Contreras's daughter had not touched Ms. Contreras before the slap.

Ms. Contreras's daughter phoned her father and asked him to come pick her up.  The police then arrived, apparently because Ms. Contreras had called them earlier, when she was concerned that her daughter was missing.  After advising Ms. Contreras that it was "okay" for her to hit her daughter, the police left.  Ms. Contreras then began to punch and scratch her daughter and pull her daughter's

3

hair.  After Ms. Contreras's daughter complained that she could not breathe, Ms. Contreras stopped hitting her daughter.  Ms. Contreras then said that she was having a heart attack and threatened to kill herself.  Ms. Contreras's daughter called for an ambulance.  At some point during the incident, Ms. Contreras said that she wished she had had an abortion and that she hated her daughter.

The police arrived, apparently in response to a report of a woman screaming. After taking photographs of Ms. Contreras's daughter's injuries, the police arrested Ms. Contreras.

In her defense, Ms. Contreras testified that she sent her daughter and her daughter's friend to buy water at a corner store nearby, but they did not return for three hours.  During this time, Ms. Contreras repeatedly called her daughter, but her daughter did not answer.  Her daughter did pick up the phone once, but then hung up and turned her phone off.  Also, while Ms. Contreras was waiting for her daughter to return, a man came by looking for her daughter.  That man made Ms. Contreras feel uncomfortable, so she called the police.

When her daughter finally returned, Ms. Contreras tried to discuss her daughter's lateness and the man who had visited, but her daughter was intransigent

and discourteous. The police arrived sometime thereafter, and they told Ms. Contreras that she could discipline her daughter if she did not leave any marks. Ms. Contreras tried to convince her daughter to see the error of her ways, but her daughter was talking back and was "foul-mouthed." Ms. Contreras then slapped her daughter without leaving any marks. In response, her daughter jumped on top of Ms. Contreras, insulted her, hit her, kicked her, and pulled her hair. During this altercation, Ms. Contreras only defended herself. Ms. Contreras's daughter was prone to nose bleeds. Ms. Contreras never said anything about an abortion.

The trial court found Ms. Contreras guilty of assault, based on the evidence that Ms. Contreras slapped her daughter hard enough to bloody her daughter's nose. The trial court concluded that Ms. Contreras slapped her daughter because her daughter was being disrespectful. The trial court credited the testimony that Ms. Contreras said that she wished she had had an abortion. With respect to the subsequent altercation, the trial court was unable to determine which version of events to credit.

Based on these findings, the trial court concluded that Ms. Contreras had slapped her daughter not for the purpose of exercising parental discipline, but rather to "salve her hurt pride." The trial court therefore did not accept Ms.

Contreras's parental-discipline defense. *See generally Florence v. United States*, 906 A.2d 889, 893 (D.C. 2006) (parent is not guilty of assault if parent uses "reasonable force for the purpose of exercising parental discipline").

## II.

Ms. Contreras argued in the trial court that she was entitled to a jury trial under the Sixth Amendment, because if she were convicted she could be subject to deportation. The motions judge ruled that Ms. Contreras was not entitled to a jury trial. On appeal, Ms. Contreras renews her claim that she was entitled to a jury trial, arguing that her simple-assault conviction is a crime of domestic violence that renders her deportable under 8 U.S.C. § 1227 (a)(2)(e)(i) (2012). We conclude that Ms. Contreras's simple-assault conviction is not a crime of domestic violence under 8 U.S.C. § 1227 (a)(2)(e)(i).

To qualify as a crime of domestic violence under 8 U.S.C. § 1227 (a)(2)(e)(i), an offense must among other things be a crime of violence under 18 U.S.C. § 16 (a) (2012). An offense is a crime of violence if the offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16 (a) (2012). To be a

crime of violence under § 16 (a), an offense must require "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting phrase "use, attempted use, or threatened use of physical force" under 18 U.S.C. § 924 (e)(2)(i) (2012); relying on *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) ("The ordinary meaning of ["crime of violence"], combined with [18 U.S.C.] § 16's emphasis on the use of physical force against another person . . . suggests a category of violent, active crimes."); *see also In re Velazquez*, 25 I. & N. Dec. 278, 283 (B.I.A. 2010) (offense is crime of violence under 18 U.S.C. § 16 (a), thus providing basis for removal of alien, only if offense requires use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person") (quoting *Johnson*, 559 U.S. at 140); *United States v. Castleman*, 134 S. Ct. 1405, 1411 n.4 (2014) ("Nothing in today's opinion casts doubt on" holdings in cases such as *Velasquez*, 25 I. & N. Dec. at 282, "extend[ing] *Johnson*'s requirement of violent force to the context of a 'crime of violence' under § 16.").

In determining whether an offense is a crime of violence under provisions such as 18 U.S.C. § 16 (a), courts look to the elements of the offense, rather than to the facts of a particular case. *See, e.g.*, *Leocal*, 543 U.S. at 7 (language of 18 U.S.C. § 16 (a) "requires us to look at the elements and the nature of the offense of

conviction, rather than to the particular facts relating to petitioner's crime"). If a statute "sets out one or more elements of the offense in the alternative," then courts may consider certain materials, such as charging documents and jury instructions, to determine which alternative element was the basis of the defendant's conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). When such a statute is at issue, the court examines "the elements of the crime of conviction (including the alternative element in the case)," not the facts of the crime. *Id.* at 2281, 2285.

Our simple-assault statute prohibits "unlawfully assault[ing] or threaten[ing] another [person] in a menacing manner." D.C. Code § 22-404 (a)(1). Because the statute does not specify the elements of assault, "the common law definition of the offense controls." *Peoples v. United States*, 640 A.2d 1047, 1052 (D.C. 1994). *See, e.g.*, *Nkop v. United States*, 945 A.2d 617, 620 (D.C. 2008) ("we follow the common law concept of" simple assault). "District of Columbia courts have recognized a number of different types of assault, including attempted battery, intent to frighten assaults, and offensive sexual touching." *Alfaro v. United States*, 859 A.2d 149, 156 (D.C. 2004) (citations omitted).

Ms. Contreras argues that she was convicted of attempted-battery assault and that this court should focus on the elements of that type of assault in determining

whether her conviction is a "crime of violence." Although the United States does not dispute that Ms. Contreras was convicted of attempted-battery assault, the United States does argue that our inquiry should focus on the elements of simple assault in general, not on the elements of attempted-battery assault in particular. We do not decide that question and instead accept for current purposes Ms. Contreras's position that our focus should be on the elements of attempted-battery assault.[1]

Ms. Contreras states that the elements of attempted-battery assault are "(1) that the defendant injured the victim with force or violence, (2) that [the defendant] intended to use force or violence against the victim; and (3) that [the defendant] had the ability to injure the victim." We have defined the elements of attempted-battery assault in various ways, none of which precisely correspond to Ms.

---

[1] Because Ms. Contreras slapped her daughter in the face, this case involves a completed battery, not merely an attempted battery. *See, e.g.*, *Mahaise v. United States*, 722 A.2d 29, 30 (D.C. 1998) ("A battery is any unconsented touching of another person."). For current purposes, however, the distinction between a completed battery and an attempted battery is "of no legal consequence." *Ray v. United States*, 575 A.2d 1196, 1199 (D.C. 1990). *See, e.g.*, *Mahaise*, 722 A.2d at 30 ("[E]very completed battery necessarily includes an assault."). We also note that although Ms. Contreras at one point suggests that she was convicted on the theory that she intended to create a grave risk of bodily injury to her daughter, Ms. Contreras bases that suggestion on the allegations contained in the count of the information charging Ms. Contreras with second-degree cruelty to children. Ms. Contreras was acquitted of that charge, and she does not rely on that charge in arguing on appeal that she had a right to a jury trial.

Contreras's formulation. *See, e.g.*, *Parks v. United States*, 627 A.2d 1, 4-5 (D.C. 1993) ("Attempted-battery assault requires proof of an attempt to cause a physical injury, which may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person.") (internal quotation marks omitted); *Moore v. United States*, 599 A.2d 1381, 1383 (D.C. 1991) ("A 'battery type' assault such as that alleged here is an attempt or effort, with force or violence, to do injury to the person of another; the prosecution must prove that the defendant had the apparent present ability to carry out such an attempt or effort, and had a general intent to do the act or acts constituting the assault.") (internal quotation marks omitted). Moreover, it is well settled that attempted-battery assault does not require actual injury to the victim. *See, e.g.*, *Parks*, 627 A.2d at 4-5; *cf. Williamson v. United States*, 445 A.2d 975, 978 (D.C. 1982) ("The act does not have to result in injury . . . ."); *Buchanan v. United States*, 32 A.3d 990, 1003 (D.C. 2011) (Ruiz, J., concurring) ("It bears repeating that because attempted-battery assault, by definition, is an *attempt*, there need be no actual injury or contact at all."). Nevertheless, for current purposes we assume that Ms. Contreras has accurately described the elements of attempted-battery assault.

On the foregoing assumptions, Ms. Contreras's position at first blush seems plausible. If attempted-battery assault requires both "an injury with force or violence" and an "intent to use force or violence against the victim," then it might seem to follow naturally that attempted-battery assault has as an element the use or attempted use of physical force. The difficulty for Ms. Contreras's position, however, is that the degree of violence required under federal law for purposes of statutes such as 18 U.S.C. § 16 (a) differs from the degree of violence required under our law for purposes of the simple-assault statute. As we have noted, federal law requires that the force at issue must be "violent force—that is, force capable of causing physical injury or pain to another person." *Johnson*, 559 U.S. at 140. Our cases make clear that attempted-battery assault convictions under our law do not require force or violence rising to the level required under federal law. *See, e.g.*, *Ray v. United States*, 575 A.2d 1196, 1198-99 (D.C. 1990) (upholding simple-assault conviction where defendant spat on victim; "It is firmly established in our case law that the injury resulting from or threatened by an assault may be extremely slight. There need be no physical pain, no bruises, no breaking of the skin, no loss of blood, no medical treatment. 'Violence' in its ordinary meaning is not a necessary element of assault, for an attempt to do unlawfully to another any bodily injury however small constitutes an assault.") (brackets and internal quotation marks omitted).

Many federal courts, including the Supreme Court, have held that convictions under assault or battery statutes comparable to our assault statute do not qualify as crimes of violence within the meaning of statutes such as 18 U.S.C. § 16 (a). *See, e.g.*, *Castleman*, 134 S. Ct. at 1411 n.4 ("The Courts of Appeals have generally held that mere offensive touching cannot constitute the 'physical force' necessary to a 'crime of violence,' just as we held in *Johnson* that it could not constitute the 'physical force' necessary to a 'violent felony.' The Board of Immigration Appeals has similarly extended *Johnson*'s requirement of violent force to the context of a 'crime of violence' under [18 U.S.C.] § 16. Nothing in today's opinion casts doubt on these holdings . . . .") (citations omitted); *Johnson*, 559 U.S. at 140-45 (Florida felony offense of battery, which permits conviction based on offensive touching, was not "violent felony," because it did not require "violent force—that is, force capable of causing physical pain or injury to another person"); *cf. In re Velazquez*, 25 I. & N. Dec. at 279-83 (conviction under Virginia law for misdemeanor assault and battery was not "crime of violence" and did not provide basis for deportation, because conviction did not require use of "violent force") (internal quotation marks omitted).

We reach the same conclusion as to attempted-battery assault under our law. Because a conviction for attempted-battery assault can rest on the use or attempted use of force that does not rise to the level of violent force as required under federal law, such a conviction does not qualify as a crime of violence under 18 U.S.C. § 16 (a). To the extent that that Ms. Contreras argues that the facts of her particular case did involve violent force, we reiterate that our inquiry is into the elements of the offense, not the facts of a particular case. *Descamps*, 133 S. Ct. at 2281, 2285.

In sum, we conclude that Ms. Contreras's simple-assault conviction is not a conviction for a crime of violence, and Ms. Contreras therefore is not deportable under 8 U.S.C. § 1227 (a)(2)(e)(i). *Cf.* D.C. Code § 23-1331 (4) (2012 Repl.) (for purposes of determining pretrial release, "crime of violence" includes "aggravated assault" and "assault with significant bodily injury" but not simple assault). Ms. Contreras's claim of a right to a jury trial rests on the premise that her conviction made her deportable under 8 U.S.C. § 1227 (a)(2)(e)(i). Because we have now held otherwise, we affirm the trial court's ruling that Ms. Contreras was not entitled to a jury trial.

**III.**

Ms. Contreras also challenges the trial court's rejection of her parental-discipline defense, arguing that the evidence did not permit the trial court to find beyond a reasonable doubt that Contreras lacked a disciplinary purpose when she struck her daughter. We disagree.

In considering a challenge to the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict, giving full weight to the right of the fact-finder to determine credibility, weigh the evidence, and draw reasonable inferences. *See Poulnot v. District of Columbia*, 608 A.2d 134, 137 (D.C. 1992). "[T]he evidence is sufficient if, after viewing it in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . ." *Smith v. United States*, 55 A.3d 884, 887 (D.C. 2012) (internal quotation marks omitted). This court will not reverse a trial court's factual findings after a bench trial unless those findings are "plainly wrong or without evidence to support [them]." D.C. Code § 17-305 (a) (2012 Repl.).

In substance, Ms. Contreras's testimony at trial was that she had a disciplinary purpose when she slapped her daughter. The trial court specifically found, however, that Ms. Contreras did not have a disciplinary purpose in slapping her daughter, and that instead Ms. Contreras struck her daughter out of "hurt pride." There was evidence in the record supporting the trial court's refusal to credit Ms. Contreras's claim to have acted with a disciplinary purpose. As this court has noted, evidence that a parent was angry is not necessarily inconsistent with a claim of parental discipline. *Florence v. United States*, 906 A.2d 889, 894-95 (D.C. 2006). But there was also evidence that Ms. Contreras said that she wished she had had an abortion and that she hated her daughter. We are not free to overturn the trial court's finding that Ms. Contreras acted out of a desire to be "hurtful" rather than to correct her daughter's misbehavior. *See generally, e.g.*, *Lee v. United States*, 668 A.2d 822, 833 n.26 (D.C. 1995) ("We are in no position to second-guess, on the basis of a paper record, a credibility determination by a trier of fact who was in the courtroom . . . and who had the opportunity to observe [the witness's] demeanor.").

Our decision in *Florence* is not to the contrary. The evidence in *Florence* was that the defendant told her daughter to get ready to go to an appointment at a medical clinic for obese children. 906 A.2d at 890. Instead, the daughter took a

bag of prohibited food items and tried to eat them. *Id.* at 890-91. After the defendant took the bag and hid it, the daughter ransacked her mother's room for the food. *Id.* at 891. During an ensuing altercation, the defendant hit her daughter three times with an unheated curling iron. *Id.*

The trial court rejected the defendant's parental-discipline defense, finding that there was "no testimony . . . to suggest that this was done to discipline." *Id.* at 894. This court concluded, however, that there was testimony indicating that the defendant had acted to discipline her child. *Id.* at 894-96. This court also concluded that the trial court had erroneously treated parental anger as inconsistent with a purpose to discipline. *Id.* at 894-95.

Rather than remanding for the trial court to render a verdict based on a correct understanding of the facts and the law, however, this court reversed the defendant's convictions outright, finding as a matter of law that there was "at least a reasonable doubt that [the defendant] was acting to discipline her daughter and used reasonable force in doing so." *Id.* at 896. In reaching that conclusion, this court acknowledged that it was "bound by the trial court's credibility determination[s]." *Id.* at 893 n.4. This court explained, however, that "the essential facts that underlay [the parental-discipline] defense were not disbelieved

by the trial court and were, in fact, corroborated by [the defendant's daughter]."

*Id.*

This case differs from *Florence* in three significant respects.  First, the trial court in this case did not incorrectly state that there was no evidence to support a parental-discipline defense.  Second, the trial court in this case did not erroneously treat the existence of parental anger as necessarily inconsistent with a purpose to discipline.  Third, and most critically, the trial court in this case explicitly discredited Ms. Contreras's claim of a disciplinary purpose and gave specific reasons for making that credibility determination.

In sum, the trial court in this case was not plainly wrong in rejecting Ms. Contreras's parental-discipline defense and finding Ms. Contreras guilty of assault.

The judgment of the Superior Court is therefore

*Affirmed.*