**Darrell J. PARKS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 91–CF–922.

District of Columbia Court of Appeals.

Argued Dec. 9, 1992.
Decided June 3, 1993.

James A. Kohm, D.C. Law Students in Court Program, for appellant.

Larry J. Gusman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black, and Lori A. Green, Asst. U.S. Attys., were on the brief, for appellee.

Before STEADMAN and SULLIVAN, Associate Judges, and GALLAGHER, Senior Judge.

SULLIVAN, Associate Judge:

Appellant was convicted by a jury of four offenses: assault on a police officer with a dangerous weapon, a pistol

(D.C.Code § 22–505(b) (1989)); [1] possession of a firearm during a crime of violence (D.C.Code § 22–3204(b) (1992 Supp.)); [2] carrying a pistol without a license (D.C.Code § 22–3204(a) (1989 and 1992 Supp.)); and willful failure to appear in court (D.C.Code § 23–1327(a) (1989)). [3]

Appellant makes three principal contentions on appeal. First, he challenges the denial of his motion for judgment of acquittal and contends that the evidence was insufficient to sustain his conviction for assault on a police officer with a dangerous weapon, a pistol. Second, appellant challenges his conviction of assault on a police officer with a dangerous weapon, a pistol, on the ground that the trial court failed to instruct the jury that it was required to reach a unanimous verdict as to which type of assault he committed, i.e., an intent-to-frighten assault or an attempted-battery assault. Third, he challenges his conviction for possession of a firearm during a crime of violence on the ground that the predicate offense of assault on a police officer with a dangerous weapon is not listed as a crime of violence as defined in D.C.Code § 22–3201(f) (1989 and 1992 Supp.). We affirm.

## I.

According to the government's evidence, Sergeants Harvey Van Buren and Jesse Millhouse, after several attempts in their marked police cruiser, stopped the four-door vehicle with expired tags that appellant was driving. Appellant was accompanied by two passengers, Anthony Feggins in the front seat and Derrick Johnson in the rear driver's side seat.

Sergeant Van Buren, who was in full uniform, immediately approached appellant and asked him for his driver's license and vehicle registration. At the same time, Sergeant Millhouse approached the front passenger's door and shined his flashlight inside the vehicle. When appellant failed to produce either the license or registration, Sergeant Van Buren radioed the police dispatcher to determine whether those documents were validly on file.

Sergeant Jude Waddy arrived to provide assistance shortly after appellant's car was stopped. He went to the driver's side rear door to ask Johnson to step out; Johnson refused to do so. Waddy then opened the rear door and leaned in, over Johnson, toward the back of the front seat. Sergeant Waddy testified that while he was leaning into the car, he observed appellant grab the steering wheel with his left hand and place his left foot on the brake. Waddy then observed appellant, in one continuous motion with his right hand: start the car, put it in gear, reach straight down his leg to the floor, retrieve a pistol from under the seat, lean to his right, and bring the gun back up in his hand. Waddy stated that appellant never took his eyes off of Sergeant Van Buren, who remained standing outside the driver's door with a note pad in one hand and a radio in the other. Sergeant Waddy also testified that appellant gave no indication that he knew of Waddy's presence.

When Sergeant Waddy saw appellant raise the pistol up to his knee, he yelled, "Stop!" and pulled his head back from the car while simultaneously drawing his service revolver. Before the car moved, Waddy fired at appellant. In response to a question by the prosecutor as to why he fired, Sergeant Waddy replied: "I thought he was going to shoot Sergeant Van Bu-

---

1. D.C.Code § 22–505(b) states:
   Whoever in the commission of [an assault on any officer or member of any police force operating in the District of Columbia while engaged in or on account of the performance of his official duties] uses a deadly or dangerous weapon shall be imprisoned not more than 10 years.

2. D.C.Code § 22–3204(b) states in relevant part:
   No person shall within the District of Columbia possess a pistol ... or any other firearm ... while committing a crime of violence....

3. Appellant's five-count indictment also included one count of assault with a dangerous weapon in violation of D.C.Code § 22–502 (1989). As will be discussed, *infra*, the trial court granted his motion for judgment of acquittal as to that count, accepting appellant's argument that the offense was effectively encompassed within the charge of assault on a police officer with a dangerous weapon.

ren." After Waddy fired at him, appellant fled in his vehicle. The vehicle was later found abandoned several blocks down the street, and the pistol was recovered from under the gas pedal. Although appellant escaped, he was subsequently arrested.

Sergeant Van Buren testified that he did not see the driver reach down as though he was going to retrieve anything; that he did not see the rear driver's side door open; and that he never saw Sergeant Waddy draw his revolver.

Sergeant Millhouse testified that he never saw appellant's gun until it was removed from the vehicle following his escape. Millhouse testified further that after appellant turned the vehicle on, he "pulled the [front seat passenger] out of the car. I guess we maybe stepped back about a foot or so when a shot rang out. And the vehicle coasted forward and then the vehicle sped off." [4]

## II.

### THE MOTION FOR JUDGMENT OF ACQUITTAL

On the facts here and consistent with the government's theory that an assault had occurred, in order to convict appellant of the crime of assault on a police officer with a dangerous weapon, a pistol, the government had the burden of proving beyond a reasonable doubt: 1) each of the elements of the criminal offense of simple assault; 2) that appellant knew or should have known that the victim was a police officer engaged in the performance of his official duties; and, 3) that appellant used a dangerous weapon, a pistol, during the assault. *See Carter v. United States*, 531

A.2d 956, 960 n. 12 (D.C.1987), and cases cited therein.

This court applies the same standard used by the trial court in determining whether the evidence was sufficient to support a conviction. *See Curry v. United States*, 520 A.2d 255, 263 (D.C.1987). Accordingly, we must "review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Id.* (citations omitted). Reversal of the trial court's denial of appellant's motion for judgment of acquittal is warranted only where the evidence "is such that a reasonable juror *must* have a reasonable doubt as to the existence of any of the essential elements of the crime." *Id.* (citation omitted). Thus, this court may overturn the conviction only if it finds the evidence insufficient because "the jury [was] required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Id.* (citation omitted).

### A. Criminal Assault

The concept of criminal assault has been expanded in this jurisdiction, as in most jurisdictions,[5] to include not only the common law attempted-battery theory but also the intent-to-frighten theory adopting certain aspects from the civil law of torts.[6] *See Anthony v. United States*, 361 A.2d 202, 204–05 (D.C.1976).

We have defined attempted-battery assault as follows:

> Attempted-battery assault requires proof of an attempt to cause a physical injury,

---

**4.** Although appellant did not testify, he called several witnesses on his behalf. Appellant's trial counsel's theory was that Sergeant Waddy fabricated the story that he saw appellant retrieve the pistol from under the car seat as an after-the-fact justification for discharging his service revolver. In support of appellant's claim, Feggins, the front seat passenger, testified that appellant drove off immediately after Feggins stepped out of the car and that he heard a shot after the car was about thirty-five or forty feet away. Sergeant Ederheimer, the arresting officer whom appellant called as an adverse

witness, testified that Sergeant Waddy approached the vehicle from the right rear rather than from the left rear as Sergeant Waddy testified.

**5.** 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 180 (14th ed. 1979 and 1992 Supp.).

**6.** The government prosecuted this case, and the trial court instructed the jury, on both theories of assault.

which "may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person."

*Robinson v. United States*, 506 A.2d 572, 574 (D.C.1986) (quoting *Patterson v. Pillans*, 43 App.D.C. 505, 506–07 (1915)). *See also (Joseph A.) Smith v. United States*, 601 A.2d 1080, 1082 (D.C.1992); *McGee v. United States*, 533 A.2d 1268, 1269–70 (D.C.1987).

We have articulated the following definition of intent-to-frighten assault:

Intent-to-frighten assault … requires proof that the defendant intended either to cause injury or to create apprehension in the victim by engaging in some threatening conduct; an actual battery need not be attempted.

*Robinson, supra,* 506 A.2d at 574 (citation omitted). *See also Smith, supra,* 601 A.2d at 1082; *McGee, supra,* 533 A.2d at 1269.

■ Three essential elements constitute the offense of simple assault under either theory. *See Williamson v. United States,* 445 A.2d 975, 978 (D.C.1982). First, there must be an act on the part of the defendant; second, at the time the defendant commits the act, he or she must have the apparent present ability to injure or frighten the victim; third, at the time the act is committed, the defendant must have the intent to perform the act which constitutes the assault. *See id.*

■ The major distinction between the two theories is in the nature of the intent element that must be proven. *Robinson, supra,* 506 A.2d at 574. As noted, *supra,* one of the essential elements of simple assault is that, at the time the act is committed, the defendant must have the intent to perform the act which constitutes the assault. *See (Clifford) Smith v. United States,* 593 A.2d 205, 207 (D.C.1991); *Williamson, supra,* 445 A.2d at 978. Thus, "[o]ur attention is focused 'upon the menacing conduct of the accused and his purposeful design either to engender fear in [(intent-to-frighten theory)] or do violence to [(attempted-battery theory)] his vic-

tim.'" *Sousa v. United States,* 400 A.2d 1036, 1044 (D.C.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979) (quoting *Anthony, supra,* 361 A.2d at 206).

■ Under both theories of assault, the essential element of present ability connotes apparent ability, rather than actual ability, to accomplish the threatened harm. *See Anthony, supra,* 361 A.2d at 205, and cases cited therein. *See also Williamson, supra,* 445 A.2d at 978; *Patterson v. Pillans, supra,* 43 App.D.C. at 507. To determine apparent ability, we must look to what the conduct of the assaulting party and the surrounding circumstances denote at the time of the assault. *Anthony, supra,* 361 A.2d at 205.

It is important to note, however, that while the subjective perception of fear or apprehension by the victim in a particular case may be relevant, neither theory requires factual proof that the victim actually experience apprehension or fear as one of the essential elements. *See Mihas v. United States,* 618 A.2d 197, 200 (D.C.1992); *Robinson, supra,* 506 A.2d at 575; *Anthony, supra,* 361 A.2d at 206. *See also State v. Jeremiah,* 546 A.2d 183, 187 (R.I.1988). Rather, as we said in *Anthony:*

[T]he crucial inquiry [is] whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility…. [A]pplication of the standard of "apparent present ability" does not elevate the victim's subjective perception to an element of the crime of assault. Rather, this standard focuses attention squarely upon the menacing conduct of the accused and his purposeful design either to engender fear in or do violence to his victim. Both the doctrine of apparent ability and the rule abrogating the necessity to show the victim's actual fear stem from a similar appreciation of the wrongfulness of the criminal conduct involved. The criminal law, designed as it is to protect public order, proscribes acts which increase "the potential for injury, and the tendency toward resistance, conflict, and violence."

*Id.* at 206 (citation omitted). *Accord, Smith, supra,* 593 A.2d at 206 ("[t]o prove the crime [of assault] it is not necessary that the victim experience apprehension...."); *Williamson, supra,* 445 A.2d at 978 ("[D]espite historical distinctions between the criminal and the tort concepts of assault, criminal assault in the District of Columbia encompasses such conduct as *could* induce in the victim a well-founded apprehension of peril."). (Emphasis added.) It necessarily follows that the victim need not be aware of the threatening act so long as an objective observer would perceive it as an immediate threat.

### B. Appellant's Argument

Appellant argues that the government's evidence that he "reach[ed] down under the front seat of the car and rais[ed] a gun to his knee[,] while [Sergeant] Van Buren stood outside the door of the car unaware of this action[,]" does not "support a conviction for an attempted battery assault" or even "an intent-to-frighten" assault. Further, he argues that his "actions cannot be seen as the type that would demonstrate an inten[t] to cause apprehension or a menacing threat to [Sergeant] Van Buren" because he did not shoot, attempt to shoot, or "point[ ] or brandish[ ] a gun in any manner" at Sergeant Van Buren.

### C. The Trial Court's Ruling

After consideration of the applicable case law and a lengthy colloquy with the parties' counsel, the trial court found the evidence to be sufficient to support a conviction of assault on a police officer with a dangerous weapon, a pistol, and, hence, denied appellant's motion for judgment of acquittal. Relying on *Robinson, supra,* 506 A.2d at 574, for its explanation of the distinction between the attempted-battery and intent-to-frighten types of assault, the trial court stated:

I have no doubt that a reasonable juror could conclude beyond a reasonable doubt that the defendant intened [sic] either to cause injury or to create apprehension in Sgt. Van Buren, by bringing the pistol or the weapon up from where it was apparently stowed.

I say what [sic] because of the fact that evidence showed that the driver of the automobile had turned on the motor and put ithe [sic] car into gear before going for the weapon, and it seems to me reasonable to infer from that that he intended to take off without having been released by the officer.

Since the evidence showed that he intended to take off and that the officers were not yet ready for him to take off, it would not be ... unreasonable, and in fact, it would be reasonable, in my judgment, for the jurors to infer that ... the driver intended to use the weapon to enforce that intent to take off, whether it be simply by frightening the officer into doing nothing about it or actually by shooting him.

### D. Intent-to-Frighten Assault

██ Appellant's act of starting his car, reaching for his pistol, and bringing it up, all in one continuous motion, with his gaze fixed on Sergeant Van Buren, was sufficient to prove the first element of simple assault, i.e., an act on the part of the defendant. Proof of the second element, apparent present ability to either injure or frighten the victim at the time the act was committed, can reasonably be inferred from the fact that appellant had a pistol in his hand.

As for the third element, an intent to perform the act which constitutes the assault, we concur in the trial court's essential reasoning that a reasonable juror could infer from the evidence in the record that appellant intended to use the pistol in his hand to enforce his intent to leave the scene without Sergeant Van Buren's permission, either by frightening the officer into doing nothing about it or actually by shooting him. Thus, viewing the evidence in the light most favorable to the government, and giving it the benefit of all reasonable inferences, as we must, *see Curry, supra,* 520 A.2d at 263, we conclude that the evidence was sufficient for a reasonable juror to find beyond a reasonable doubt that appellant had the requisite intent either to injure, or to create apprehen-

sion or fear in, Sergeant Van Buren. Contrary to appellant's argument, it was not necessary that Sergeant Van Buren " 'be shown factually to have experienced apprehension or fear in order to establish [an intent-to-frighten assault].' " *Robinson, supra,* 506 A.2d at 575 (citation omitted). Pursuant to *Robinson,* " 'the crucial inquiry [is] whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility.' " *Id.* (citation omitted). Appellant's acts were of such a manner as would portend a threat to a reasonable person. In addition to situations in which a gun is pointed at the victim, the instruction on intent to frighten assault includes situations in which a weapon is used "in any manner that would reasonably justify the other person in believing that the weapon might immediately be used against him. . . ." *Id.* at 574.

Therefore, we hold that there was sufficient evidence to support appellant's conviction of assault on a police officer with a dangerous weapon, a pistol, in violation of D.C.Code § 22–505(b) on an intent-to-frighten theory. *See Smith, supra,* 601 A.2d at 1082; *McGee, supra,* 533 A.2d at 1270; *Robinson, supra,* 506 A.2d at 574; *see also Mihas, supra,* 618 A.2d at 200.

### E. Attempted–Battery Assault

As to the attempted-battery theory, we hold that the evidence was sufficient to sustain the first and second elements of simple assault—namely, an act by the defendant and the defendant's apparent present ability to either frighten or injure the victim at the time the act was committed—for the reasons stated in Part II. D, *supra.*

■ With regard to the third element, an intent to perform the act which constitutes the assault, we agree with the essence of the trial court's ruling, that the government produced sufficient evidence from which a reasonable jury could find an attempt by appellant to cause an actual physical injury. *See Robinson, supra,* 506 A.2d at 574. A reasonable jury could infer that appellant was in the process of committing an actual battery when, with his gaze fixed on Sergeant Van Buren: appellant started the car and put it in gear in one continuous motion with his right hand; reached straight down his leg to the floor; retrieved a pistol from under the seat and brought it back up in his hand; and leaned to his right while raising the pistol up as far as his knee. The jury could also infer that had it not been for Sergeant Waddy's intervention by yelling, "Stop!" and shooting at appellant, appellant intended to commit a battery by shooting Sergeant Van Buren.[7] It was irrelevant at that point whether Sergeant Van Buren actually experienced fear or apprehension, or, indeed, knew what was happening. *See Robinson, supra,* 506 A.2d at 575 (citing *Anthony, supra,* 361 A.2d at 206). Accordingly, we hold that there also was sufficient evidence adduced at trial to sustain appellant's conviction of assault on a police officer with a dangerous weapon, a pistol, on an attempted-battery theory.

### F. Knowledge That the Victim Was a Police Officer

■ The government also produced sufficient evidence to prove that appellant knew Sergeant Van Buren was a police officer engaged in the performance of his official duties. Sergeant Van Buren, while driving in a marked police cruiser, stopped appellant because the vehicle he was driving had expired tags. Sergeant Van Buren was in full uniform when he requested appellant to display his operator's permit and vehicle registration. Moreover, the testimony of Feggins, the front seat passenger in appellant's car, corroborated Sergeant Van Buren's account that he tried several times to stop appellant's car before appellant pulled over.

---

7. This case is distinguishable from *McGee, supra,* 533 A.2d at 1270. In *McGee,* the government presented no evidence that the appellant displayed his weapon in an attempt to harm anyone, as would have been required for the attempted-battery theory to apply, and the trial court gave only the attempted battery and not the intent-to-frighten instruction. In the present case, we have sufficient evidence to support a finding under either theory as well as trial court instructions on both theories.

### G. Use of Dangerous Weapon During Assault

■ The government also clearly presented sufficient evidence from which a reasonable jury could infer that appellant used a pistol during the alleged assault. Although neither Sergeant Van Buren nor Sergeant Millhouse witnessed the driver reaching for or in possession of a gun, Sergeant Waddy testified about the manner in which appellant retrieved his pistol to carry out his intended escape either by shooting or frightening Sergeant Van Buren. See Part II. E., *supra*. Moreover, the pistol was subsequently recovered under the gas pedal of the car that appellant had been driving.

### H. Conclusion

We are satisfied that sufficient evidence was adduced at trial for a reasonable jury to conclude beyond a reasonable doubt that the requirements for a conviction of assault on a police officer with a dangerous weapon, a pistol, were proven in this case. Thus, we hold that the trial court committed no error in denying appellant's motion for judgment of acquittal. *See Curry, supra*, 520 A.2d at 263.

### III.

### THE COURT'S INSTRUCTIONS

The trial court instructed the jury on both theories of assault and used a verdict form which did not distinguish between the two theories. Appellant failed to object at trial to the court's failure to instruct the jury that it must reach a unanimous verdict[8] as to which type of assault appellant committed. Therefore, this court's review must be in accordance with the extremely limited plain error standard. *See Harris v. United States*, 602 A.2d 154, 159 (D.C. 1992) (en banc) (citing *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)) ("[R]eversal under the plain error doctrine is justified only in exceptional circumstances where 'a miscarriage of justice would otherwise result.'").

■ Appellant's contention on appeal that he was denied his right to be convicted by a unanimous verdict based on evidence establishing his guilt beyond a reasonable doubt is unpersuasive. A unanimity instruction is required where "a single count encompasses two or more factually or legally separate incidents." *Gray v. United States*, 544 A.2d 1255, 1257 (D.C. 1988). The trial court must instruct the jury that to reach a unanimous decision the jury must be in agreement as to which incident or incidents its verdict is based on. *See id.* "There is no danger[, however,] of a non-unanimous verdict whe[re, as here,] one charge encompasses only a single incident." *Owens v. United States*, 497 A.2d 1086, 1093 (D.C.1985), *cert. denied*, 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986) (citations omitted). We hold that a unanimity instruction as to which type of assault appellant committed was not required in this case, because the alleged assault was based on a single incident, in which appellant retrieved his pistol to carry out his intended escape either by shooting or frightening Sergeant Van Buren.[9] Accordingly, the trial court did not commit error, much less plain error. *See Harris, supra*, 602 A.2d at 159 (citing *Frady, supra*, 456 U.S. at 163 n. 14), 102 S.Ct. at 1592 n. 14); *cf. Schad v. Arizona*, —— U.S. ——, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)

---

8. Under the Sixth Amendment, a defendant has a constitutional right to have his fate decided by a unanimous verdict. *See, e.g., Scarborough v. United States*, 522 A.2d 869 (D.C.1987) (en banc). This is deemed to be an indispensable characteristic of the right to a trial by jury. *Id.* Super.Ct.Crim.R. 31(a) expressly requires a unanimous verdict.

9. We recognize that "the unanimity issue under a single count of an information or indictment does not turn only on whether separate criminal acts occurred at separate times (although in some cases it may); it turns, more fundamentally, on whether each act alleged under a single count was [unlike the present case] a separately cognizable incident—by reference to separate allegations and/or to separate defenses—whenever it occurred." *Scarborough, supra* note 8, 522 A.2d at 873. We note that in that case, a distinct item of property was involved with respect to each proffered defense, although treated as stolen at the same time.

(jury unanimity not required where charges included premeditated and felony murder, because these simply represented two different states of mind as alternative means of committing the same crime).

## IV.

## POSSESSION OF A FIREARM WHILE COMMITTING A CRIME OF VIOLENCE

■ Finally, we consider appellant's challenge to his conviction of possession of a firearm while committing a crime of violence pursuant to D.C.Code § 22–3204(b) and his mandatory minimum five-year sentence required by that statute and imposed by the trial court. Appellant argues essentially that the offense of assault on a police officer with a dangerous weapon cannot be a predicate offense for conviction of possession of a firearm while committing a crime of violence, because assault on a police officer with a dangerous weapon is not listed as a crime of violence in D.C.Code § 22–3201(f). His argument is not persuasive.

D.C.Code § 22–3204(b) provides that:
[n]o person shall within the District of Columbia possess a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm while committing a crime of violence or dangerous crime as defined in § 22–3201. Upon conviction of a violation of this subsection, the person may be sentenced to imprisonment for a term not to exceed 15 years and shall be sentenced to imprisonment for a mandatory-minimum term of not less than 5 years and shall not be released on parole, or granted probation or suspension of sentence, prior to serving the mandatory-minimum sentence.

D.C.Code § 22–3201(f) defines a crime of violence as including:
any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnapping, burglary, robbery, housebreaking, any assault with intent to kill, commit rape, or robbery, *assault with a dangerous weapon*, assault with intent to commit any offense punishable by imprisonment in the penitentiary, arson, or extortion or blackmail accompanied by threats of violence.
*Id.* (emphasis added).

While appellant correctly states that assault on a police officer with a dangerous weapon is not specifically listed in D.C.Code § 22–3201(f), the legislative intent of D.C.Code § 22–3204(b) belies appellant's position. *See (Michael E.) Thomas v. United States,* 602 A.2d 647, 651–53 (D.C.1992) (describing purpose of D.C.Code § 22–3204(b)); *Freeman v. United States,* 600 A.2d 1070, 1072–73 (D.C.1991) (describing history and intent of D.C.Code § 22–3204(b)). In 1989, the Council of the District of Columbia enacted legislation "to create a 'new firearm possession offense,' which would be violated if an underlying dangerous crime or crime of violence 'was committed while possessing a firearm or imitation firearm.'" *Freeman, supra,* 600 A.2d at 1072 (citations omitted). The manifest "purpose [of D.C.Code § 22–3204(b)] is to proscribe the possession of firearms during a crime of violence or a dangerous crime; it is a gun control provision." *Thomas, supra,* 602 A.2d at 651.

Giving the language of D.C.Code § 22–3204 its full meaning, it would be absurd here not to include assault on a police officer with a dangerous weapon within its scope. The only distinction on the facts of this case between the crimes of assault on a police officer with a dangerous weapon and assault with a dangerous weapon is the additional proof that appellant knew that the victim was a police officer. *Cf. Williamson, supra,* 445 A.2d at 979 (to prove assault with a dangerous weapon, the government must prove "each of the elements of simple assault plus the fourth crucial element—that the assault was committed with a dangerous weapon") (citation omitted); *Carter, supra,* 531 A.2d at 960 n. 12 (to prove assault on a police officer with a dangerous weapon, the government must prove the elements of simple assault, use of a dangerous weapon, and that appellant knew that the victim was a police officer).

Assault with a dangerous weapon and assault on a police officer with a dangerous weapon constitute substantially the same offense, as appellant successfully argued in the trial court.[10] If appellant had been found guilty of the crime of assault with a dangerous weapon, a pistol, his conviction would have triggered D.C.Code § 22–3204(b). Thus, it would defy reason and common sense to conclude that D.C.Code § 22–3204(b) does not apply in the present case just because the victim that appellant assaulted with a pistol was a police officer rather than an ordinary citizen.

Moreover, since appellant's counsel argued successfully before the trial court that the two offenses were essentially the same, he cannot change his position on appeal. *See Mitchell v. United States*, 569 A.2d 177, 180 (D.C.), *cert. denied*, 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990). The trial court granted appellant's request to "deny the instruction on the count for assault with a dangerous weapon" since "there [was] no distinction between ... the charge of assault on a police officer ... with a dangerous weapon and assault with a dangerous weapon[,] aside from the fact that [a] police officer [was] involved." The trial court refused to dismiss the charge of possession of a firearm while committing a crime of violence, however, because the court viewed an assault on a police officer with a dangerous weapon as an "assault with a dangerous weapon when the person being assaulted is a police officer." Appellant cannot now be allowed to reverse the position he took at trial in order to disavow the implications that flow from it. *See Mitchell, supra*, 569 A.2d at 180; *Byrd v. United States*, 502 A.2d 451, 452–53 (D.C. 1985).

Further, appellant incorrectly relies on *Thomas v. United States*, 93 U.S.App.D.C. 282, 210 F.2d 21 (1954) (per curiam), because the issues in *Thomas* are inapposite to the issues in the present case. In *Thomas*, the United States Court of Appeals for the District of Columbia Circuit addressed the sole issue of "whether the sentence imposed [for armed robbery with a pistol, D.C.Code § 22–2901 (1951),] was greater than the maximum permissible by law." *Thomas, supra*, 93 U.S.App.D.C. at 283, 210 F.2d at 22 (citation omitted). The trial court had ruled that Thomas was subject to an additional penalty under D.C.Code § 22–3202 (1951) for committing a crime of violence, robbery, while armed with a firearm or other dangerous weapon. The appellate court reversed the judgment of the trial court, however, and held that because robbery was not included within the statutory definition of "crime of violence" under D.C.Code § 22–3201, the defendant's conviction for that offense could not be subject to an enhanced sentence under D.C.Code § 22–3202.[11] Moreover, because the appellate court held that the enhanced sentence imposed in *Thomas* exceeded the fifteen-year maximum permissible term under D.C.Code § 22–2901, the court vacated the appellant's sentence and remanded the case for resentencing. That precise sentencing issue resolved by the *Thomas* court is not an issue for resolution in the present case.

Unlike the appellant in *Thomas*, whose *enhanced* sentence was imposed pursuant to a sentencing statute, *see* D.C.Code § 22–3202(b), the appellant in the present case was eligible for a statutorily prescribed sentence because of his conviction for a substantive offense under D.C.Code § 22–3204(b). "[U]nlike [22–]3202, [a sentencing statute,] the application of which is dependent upon a conviction for an underlying offense, [22–]3204(b) provides for a separate and independent [substantive] criminal offense." *Thomas, supra*, 602 A.2d at 651. *See also Freeman, supra*, 600 A.2d at 1072–73 (recognizing that D.C.Code § 22–3204 is not an enhancement provision, but rather a new offense).

■ It may be logical for determining the maximum permissible sentence for an offense to require that the offense for which the defendant is convicted and sen-

---

10. See note 3, *supra*.

11. Section 501 of Pub.L. No. 90–226 amended the *definition* of "crime of violence" by includ-

ing robbery within the definition. 81 Stat. 736 (1967) (codified as amended at D.C.Code § 22–3201 (1973)).

tenced be exactly as listed in the definitional section. However, when interpreting a statutory provision establishing as an entirely separate offense the use of a firearm while committing a crime of violence, we think it reasonable to conclude that the section is violated when the crime committed encompasses a crime of violence as defined, whether or not the defendant is convicted of that precise crime. In *Thomas*, 93 U.S.App.D.C. at 283, 210 F.2d at 22, the lesser-included offense of assault with intent to commit robbery was recognized in D.C.Code § 22–3201 as a crime of violence; robbery, the greater offense for which the appellant in *Thomas* was convicted, was not recognized by that statute. In the present case, however, as appellant's trial counsel successfully argued, the offense of assault on a police officer with a dangerous weapon is essentially the same as the offense of assault with a dangerous weapon, an offense recognized in D.C.Code § 22–3201 for which a statutorily-prescribed sentence can be imposed.

For the foregoing reasons, we hold that appellant's challenge to his conviction of possession of a firearm during a crime of violence is also without merit.

Accordingly, the judgment appealed from hereby is

*Affirmed.*