PATTERSON, Retired Appellate Judge.
Steve Hoffman appeals his misdemeanor conviction for menacing and his sentence of 30 days’ confinement. That sentence was suspended on the condition that Hoffman spend two weekends in jail. He was further ordered to pay $25 to the Alabama Crime Victims Compensation Fund and a fine of $500.
Hoffman contends that the trial court erred in denying his motion for a judgment of acquittal made at the close of the City’s evidence and again at the close of all the evidence on the ground that the City failed to prove a prima facie case of the offense of menacing. He further asserts that the trial court also erred in denying his “Amended Motion for Judgment of Acquittal after Verdict ...; or Alternatively, Motion for New Trial,” specifically, on the ground that the “verdict was contrary to the great weight of the evidence.”
The City’s evidence established that Darren Maull, the victim, had his disabled vehicle towed to a transmission repair shop, where Hoffman was employed. Maull testified that he and Hoffman agreed on a price for Hoffman to check the vehicle’s transmission; that, after Hoffman checked it, Maull could not have it repaired because he could not pay the estimated repair costs; that, when he and his cousin went to the shop to pay the charge agreed to for “pulling” his transmission *128 and to have his vehicle towed from the premises, Hoffman told him he owed more (an amount Maull did not have), but refused to show him a bill; that, when he informed Hoffman that he did not have that amount of money, Hoffman told him to “get off his property” without getting his vehicle; and that Hoffman also told him that, if he did not get his vehicle that day, he could be charged more than triple the bill he had been presented with. Maull testified as follows:
“A. [Hoffman] constantly kept ... telling me you are going to leave my property, you need to get off my property. So I said, I am not going anywhere, you need to take my money and let me leave. He said, oh, you are going. Then he went in the drawer [of the desk he was standing behind]. He pulled a pistol out and he pointed it at me. So when he did that, ... that kind of scared me to the point of what are you doing. So I started walking out of the office easily....
[[Image here]]
“Q. How long did he have it pointed at you?
“A. It wasn’t long, because when he did it, I proceeded like going out of the office in fear. But the reason I was going out of the office was to let my cousin [who was standing outside the office door] know ... just in case, because I didn’t want to get shot or nothing. All I wanted was my car....
“Q. When the gun was pointed at you, ... [w]ere you scared?
“A. Yes.
“Q. At some point [were] the police called?
“A. I was encouraging him to call the cops.
[[Image here]]
“Q. When were the police called?
“A. He called the cops once I told my cousin that he pulled the gun. I was like standing right at the end of the office. He told me he was going to call the cops, and I told him to do it. So once he got on the phone with the 911 people, I felt safer then because he was talking to them.”
Maull further testified that he and his cousin then went outside and sat down; that Hoffman followed them after he finished his telephone call and told them again to leave; and that the police arrived shortly thereafter. The responding officer testified that, when he arrived at the scene, Maull was standing by his cousin’s truck, which his cousin had moved at Maull’s request off the transmission shop’s property; that Maull was calm; and that Hoffman did not want to talk to the officer, stating that he did not know why the officer was there because the dispute was a civil matter.
Hoffman testified that, before he looked at the transmission, Maull agreed to pay the higher charge; that the charge he quoted was the customary charge for that type of vehicle and included only one-half of the labor hours required to tear down a transmission; that he allowed Maull’s vehicle to remain on the premises without a storage fee for more than a month, longer than the three days usually permitted, so that Maull could attempt to get financing for the repair; that, when Maull angrily insisted that he accept less than the amount agreed to, he told Maull that he would lose his job if he accepted less; that, when he informed Maull that Maull could not take the vehicle without full payment, Maull cursed him in a loud voice; that he repeatedly asked Maull to calm down and to leave; that when Maull asked to see the paperwork, he opened his desk drawer and retrieved it from under an unloaded .25 caliber pistol, which had been in the drawer since he had started working there and *129 which he used as a paperweight; that, when Maull saw the pistol, Maull “started ranting and raving”; that he never “pulled a gun” on Maull because he did not feel threatened by Maull; and that, although he briefly talked to the responding officer, he talked to another officer at the scene. On cross-examination, the following occurred:
“Q. At the very end [of the 911-call tape,] you said, I am protected, I have firearms.
“A. There was a shotgun in the back. There are always guns there. We have three or four hunters that actually work out of that shop. There was another firearm in the back office, my boss’s office.
“Q. When you told one operator you were protected, you had loaded weapons, correct?
“A. Not really loaded. Neither one of the guns were loaded....
“Q. [W]hy would you tell the 911 operator I am protected, I have firearms, if they are not working?
“A. [T]he only reason why I guess I would say there are firearms there is Mr. Maull before was actually saying, he has got a gun, he has got a gun, he has got a gun. You could still hear him in the background saying that, after I supposedly pulled it on him, which I never did.
“Q. Do you consider an unloaded gun protection, because that’s what you told the 911 operator, I am protected, I have got firearms?
[[Image here]]
“A. Not really.”
A fellow employee, who observed the entire incident from a few feet away, testified that he did not see Hoffman pull a weapon and point it at Maull. Another employee testified that he no longer worked at the transmission repair shop because he could not get along with Hoffman; that he heard “a bunch of hell raising,” so he went to investigate; that when Hoffman pulled a paper from a desk drawer, Maull “come running out of the office hollering at his buddy that he had pulled a pistol on him”; that he did not see any pistol pulled; and that the pistol was in Hoffman’s desk drawer because, that afternoon, Hoffman was to give the pistol back to the owner, who had offered to sell it to Hoffman.
Hoffman’s primary argument regarding the sufficiency of the evidence is his assertion that the City did not establish that Maull was actually placed in fear of imminent serious physical injury. He singles out Maull’s testimony that Hoffman “kind of scared [him].” In addition, he points out that Maull did not cite, as his reason for encouraging Hoffman to call the police, Hoffman’s pointing a gun at him. (Maull instead testified that he encouraged Hoffman to call the police because Hoffman had changed the price for “pulling” the transmission.) Before the trial court, Hoffman also emphasized the fact that Maull did not leave the premises:
“If [Maull] was in fear of his life, I would assume there would be some testimony that he ... got away from the premises. Or if he was suffering from some serious fear, his actions would have been more that just walking outside talking to his cousin and walking back into the office.”
Hoffman’s contention of insufficiency is based on his erroneous assumption that the prosecution is required to prove, as an element of the offense of menacing, that the offender’s action actually evoked, in the victim, fear of imminent serious physical injury. However, that assumption is erroneous. The offense of menacing is proscribed by § 13A-6-23(a), Ala. Code 1975, which states, “A person com *130 mits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.”[1] Thus, the statute includes attempting to place the victim in fear of imminent serious physical injury. Am attempt, by definition, is unsuccessful, i.e., the actor failed at his objective, which in the case of menacing, is to harm by causing fear of imminent serious physical injury. Because § 13A-6-23 includes an attempt to place another in fear, actual subjective fear on the part of the victim is not a necessary element of menacing. See also 86 C.J.S. Threats and Unlawful Communications § 9 (1997) (“Actual subjective fear on the part of the victim is not a necessary element of the offense of menacing.” (Footnote omitted.)). Cf. Hayes v. State, 717 So.2d 30, 33 (Ala.Crim.App.1997) (the following statutory language of § 13A-6-90, proscribing stalking, does not require proof that the victim was actually placed in reasonable fear of death or serious bodily injury: “with the intent to place that person in reasonable fear of death or serious bodily harm”). See also the following cases reviewing statutes similar in pertinent part to the “attempt” provision of § 13A-6-23: People v. Stout, 193 Colo. 466, 568 P.2d 52 (1977); State v. Garcias, 296 Or. 688, 679 P.2d 1354 (1984).
Although the question whether the offender’s conduct evoked fear in the victim is relevant, the focus is on the offender’s culpability, his conduct, and his purpose — not the subjective perception or reaction of the victim. See, e.g., People v. Saltray, 969 P.2d 729 (Colo.App.1998) (because proper focus is on the intent and conduct of the actor and not the victim, it is unnecessary for the victim actually to be aware of any threat from the assailant); State v. Lockwood, 43 Or.App. 639, 642, 603 P.2d 1231, 1233 (1979) (because “[t]he victim’s subjective state of mind is not a defined element of the crime[; t]he victim’s testimony is not essential”). See also Parks v. United States, 627 A.2d 1, 6 (D.C.1993) (the court, in commenting on its definition of intent-to-frighten assault,[2] held that “the victim need not be aware of the threatening act so long as an objective observer would perceive it as an immediate threat”); State v. Jeremiah, 546 A.2d 183, 187 (R.I.1988) (the court, in rejecting the argument that the victim’s actual fear of immediate injury was not an element of the definition of assault,[3] stated that the prosecution need prove “only that the actions of the defendant were such that they would have created a well-founded fear or apprehension of an immediate injury on the part of a reasonable person who was confronted with the same or similar conduct,” thus recognizing that *131 the “test is objective, using a reasonable person as the standard rather than the subjective reaction of the victim in a particular case”), abrogated on other ground, State v. Jackson, 752 A.2d 5 (R.I.2000). The focus on the conduct of the assailant rather than on the subjective reactions of the victim stems from an “ ‘appreciation of the wrongfulness of the criminal conduct involved.’ ” Parks v. United States, 627 A.2d at 5, quoting Anthony v. United States, 361 A.2d 202, 206 (D.C.1976). “ ‘The criminal law, designed as it is to protect public order, proscribes acts which increase “the potential for injury, and the tendency toward resistance, conflict, and violence.” ’ ” Id. (citation omitted in Parks).
Moreover, the evidence did in fact show that Maull was in fear of imminent serious physical injury. The testimony was to the effect that, when Hoffman pointed the gun at Maull, Maull “started walking out of the office easily ... in fear”; that he informed his cousin “just in case, because [he] didn’t want to get shot or nothing”; that he was scared when Hoffman pointed the pistol at him; and that he felt safer when Hoffman was talking, on the telephone, to the police. We find the following appropriate (even though it is in reference to a statutory requirement of proof of fear):
“[T]he requirement that the victim was put in fear by the defendant’s acts need not rest upon the victim’s characterizing him or herself as having been afraid. The fact that a victim showed courage at the time the offense was committed does not preclude a factfinder from concluding that the victim was placed ‘in fear’ by the defendant under the statute. Likewise, the fact that the victim does not manifest his or her fear by running from the scene does not establish that the victim was not placed in fear. A victim may still be both subjectively and objectively justified in being fearful of bodily injury.”
31A Am.Jur.2d Extortion, Blackmail, Etc. § 53 (2002) (footnotes omitted).
Hoffman further asserts that the City did not prove the element of criminal intent nor introduce evidence of motive, particularly in light of Hoffman’s testimony that he had no need to point a weapon at Maull because, as a large man (300 pounds in weight and six feet two inches in height), he did not feel physically threatened by Maull and, further, because he had summoned the police. First, we find that these contentions were not preserved for this court’s review. Hoffman argued to the trial court only the specific issue discussed above, i.e., the alleged lack of proof of Maull’s actual fear. “It is well established that a defendant who states specific grounds in his motion for a judgment for acquittal waives all grounds not stated.” Ex parte Hall, 843 So.2d 746, 747 (Ala.2002). See, e.g., Thomas v. State, 622 So.2d 415, 419 (Ala.Crim.App.1992).
Furthermore, and in the alternative, these contentions are without merit. The Commentary to § 13A-6-23 observes that the offense of menacing covers “[t]he classic example ... where defendant, intending to frighten another, points an unloaded gun at him, though not known by the victim to be so.” The City’s evidence established that Hoffman intentionally pointed the pistol at Maull. The evidence further established that Hoffman did so with the intent to place Maull in fear of imminent serious physical injury. The necessary element of intent can be inferred from his pointing of the gun. In regard to any burden to prove motive, we quote from authority also quoted by Hoffman: “Motive ... is not ... an essential element of a crime.” 22 C.J.S. Criminal Law § 34 (1989) (footnotes omitted).
*132 Reviewing the City’s evidence in the light most favorable to the City, we find that a rational fact-finder could have found Hoffman guilty beyond a reasonable doubt. Accordingly, the trial court’s denial of Hoffman’s motion for a judgment of acquittal was proper. See generally Ingram v. State, [Ms. CR-01-2224, Feb. 28, 2003] — So.2d - (Ala.Crim.App.2003).
In regard to Hoffman’s contention that the trial court erred in denying his “Amended Motion for Judgment of Acquittal after Verdict ...; or Alternatively, Motion for New Trial,” specifically, the ground that the “verdict was contrary to the great weight of the evidence,” we reiterate the following:
“ “We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.’ Whitt v. State, 733 So.2d 463, 470 (Ala.Crim.App.1998). ‘ “[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.” ’ Harris v. State, 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting Byrd v. State, 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). ‘ “When the jury has passed on the credibility of evidence tending to establish the defendant’s guilt, this Court cannot disturb its finding.” ’ Rowell v. State, 647 So.2d 67, 69 (Ala.Crim.App.1994), quoting Collins v. State, 412 So.2d 845, 846 (Ala.Crim.App.1982). ‘Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie ease.’ Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App.1996), aff'd, 719 So.2d 256 (Ala.1998).”
Clark v. State, [Ms. CR-99-1062, Feb. 28, 2003 ] — So.2d -, - (Ala.Crim.App.2000) (opinion on return to remand).
Accordingly, the judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, SHAW, and WISE, JJ„ concur.

. The prosecution of Hoffman for this crime was pursuant to a municipal ordinance that makes violations of misdemeanors under State law also municipal offenses if committed within the city limits or police jurisdiction of the municipality.

. The definition of the intent-to-frighten assault used by the court in Parks v. United States, 627 A.2d 1, 5 (D.C.1993), quoting Robinson v. United States, 506 A.2d 572, 574 (D.C.1986), was, as follows:
'Intent-to-frighten assault ... requires proof that the defendant intended either to cause injury or to create apprehension in the victim by engaging in some threatening conduct; an actual battery need not be attempted.’ ”
(Citation omitted in Parks.)

.The court, in State v. Jeremiah, 546 A.2d 183, 186 (R.I.1988), referred to the following definition, which had been stated in State v. Ashness, 461 A.2d 659, 665 (R.I.1983): "an 'unlawful attempt or offer, with force or violence, to do a corporal hurt to another ... [or to put] another in fear of violence.’ ’’