*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CM-48

CARINA VICTORIA POWELL, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-13114-18)

(Hon. John Ramsey Johnson, Trial Judge)

(Submitted March 19, 2020      Decided October 1, 2020)

*Dana E. Hofferber* was on the brief for appellant.

*Jessie K. Liu*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman, John P. Mannarino*, and *LaVater Massie-Banks*, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON, EASTERLY, and MCLEESE, *Associate Judges.*

Opinion for the court by *Associate Judge* THOMPSON.

Dissenting opinion by *Associate Judge* MCLEESE at page 13.

THOMPSON, *Associate Judge*:    Following a bench trial, appellant Carina Victoria Powell was convicted of one count of intent-to-frighten assault.  On appeal she argues that the evidence was insufficient to support her conviction.  We agree and therefore reverse.

## I.

Metropolitan Police Department ("MPD") Officer Sara Khah testified that on September 4, 2018, she was driving her police vehicle, with lights and siren activated, down the 900 block of Quincy Street, N.E., behind her partner, MPD Officer Tiffany Keenon,[1] as the two were on their way to respond to a call for a domestic dispute.  Officer Khah observed appellant emerge from the other side of the street and kick the police vehicle driven by Officer Keenon.  As Officer Khah's vehicle passed appellant, she heard a "bang[,]" which she interpreted as a kick by appellant on her own vehicle as well.[2]  Diverting from their "Code 1" call, both officers pulled over to see "what [was] going on with" appellant.

---

[1] This officer's surname also appears in the record as "Keenan."

[2] Reacting to the kick while still seated in her vehicle, Officer Khah exclaimed, "what the fuck is your problem?"

Officer Khah testified that appellant "advanc[ed] toward" the officers "in an aggressive manner [with] her hands . . . fists up." Khah also testified that while appellant was walking in the direction of the officers, she made a "motion . . . touching her ankles[,]" adding on cross-examination that appellant reached for her ankles "multiple times" (testimony corroborated by the officers' body-worn camera ("BWC") footage). Officer Khah told the court that she found the movement concerning because she thought that appellant could have been trying to "pull[] a weapon out of her sock."

Officer Khah further testified that as appellant, walking "fast," drew near the officers, she spoke to them, asking, "[Y]eah, what's up? What you going to do?" The officers shouted to appellant multiple times to "move back." Instead, appellant continued to approach in an aggressive posture, getting to within arm's reach of the officers, even though Officer Keenon stepped back. Appellant's action led Officer Khah to fear that Ms. Powell "would actually harm [Officer Keenon] if [the officers] didn't get [appellant] under control right away." When appellant failed to comply with the officers' order to "back off," Officer Keenon raised her ASP baton, prepared to hit, and did hit appellant, who at about the same moment called Keenon a "bitch-ass." Officer Khah testified that appellant "had zero reaction" ("standing solid, not

a flinch") to being hit with the ASP, causing the officer to assume that "something's wrong here."

On cross-examination, defense counsel elicited Officer Khah's testimony that at the point when the officers got out of their vehicles, appellant was "not walking directly towards" them. The BWC footage shows the same. Initially, appellant was walking in the middle of the street diagonally, or at a right angle relative to the direction Officer Keenon was walking, rather than walking toward the officers. Officer Khah testified that Officer Keenon "deployed," i.e., "pulled out," her ASP after appellant started walking toward the officers. But the video footage shows that Officer Keenon pulled out the ASP as soon as she emerged from her vehicle, i.e., while appellant was still some distance away and not walking toward the officers. Officer Keenon walked toward appellant, holding the ASP, while Officer Khah asked appellant, "Are you for real? Are you serious?" (apparent references to appellant's having kicked the officers' vehicles). It appears that the ASP caught appellant's attention; she pivoted and began walking directly toward Officer Keenon, asking the officer (with apparent reference to the officer's drawn ASP), "what are you going to do that for[?]" Walking fast, appellant came within an arm's length of Officer Keenon, ignoring both officers' shouted commands to her to "back off."

Officer Khah agreed on cross-examination that, as shown in the BWC footage, appellant did not raise her hands above her waist (except when "pull[ing] her shirt over her face for a moment[]"). Defense counsel extensively cross-examined Officer Khah on her previous testimony that appellant had approached the officers with her "fists up." Officer Khah acknowledged, upon reviewing the BWC footage during cross-examination, that at various points in the video, neither of appellant's hands was "in a fist."

Officer Keenon did not testify at trial. After the court denied a defense motion for judgment of acquittal, appellant's mother, Victoria Powell, testified for the defense. Ms. Powell, who told the court that she was standing outside with appellant at the time of the incident, testified that she did not see her daughter kick or otherwise touch either police car. Ms. Powell further testified that she tried to defuse the situation between the officers and appellant, but ultimately was unsuccessful because "[t]he officer just kept coming" forward towards appellant, who ended up being "tossed" to the ground and arrested. Ms. Powell told the court that a friend across the street had caught appellant's attention, that appellant was crossing the street to see what that person wanted, and that she (Victoria Powell) called out to appellant to "watch out . . . [for] cars." Appellant did not testify.

In delivering its verdict, the trial court stated that the case was "a close call as far as threats and a menacing manner." The court did not "discount[] [Victoria Powell's] testimony[,]" but found Officer Khah's testimony to be "very credible." The court stated that it found the BWC video helpful, finding on the basis of it that appellant displayed "kind of an intimidating approach[,]" and had "a hostile look to her" as she approached Officer Keenon, "[w]ho had done something that provoked" appellant. The court reasoned that while defendant was not "an exaggerated threat," under the totality of the circumstances she was "reasonably threatening[,]" as shown in part by the evidence that Officer Keenon "pull[ed] out her asp weapon[,]" which "would have made no sense if she wasn't afraid about what [appellant] was going to do[.]" The court found that Officer Keenon "was reasonably afraid under all those circumstances."

## II.

"We review sufficiency claims de novo, viewing the evidence in the light most favorable to the prosecution, with due regard for the right of the . . . trier of fact to weigh the evidence, to determine the credibility of witnesses, and to draw reasonable inferences." *In re D.P.*, 122 A.3d 903, 907 (D.C. 2015) (internal quotation marks

and brackets omitted). "[T]he evidence is sufficient if, after viewing it . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Solon v. United States*, 196 A.3d 1283, 1289 (D.C. 2018).

In order to prove intent-to-frighten assault, the government must show "(1) that the defendant committed a threatening act that reasonably would create in another person a fear of immediate injury; (2) that, when he/she committed the act, the defendant had the apparent present ability to injure that person; and (3) that the defendant committed the act voluntarily, on purpose, and not by accident or mistake." *Joiner-Die v. United States*, 899 A.2d 762, 765 (D.C. 2006); *see also* D.C. Code § 22-404 (2012 Repl. & 2020 Supp.). A conviction of intent-to-frighten assault also "requires proof that the defendant intended either to cause injury or to create apprehension in the victim by engaging in some threatening conduct[.]" *Parks v. United States*, 627 A.2d 1, 5 (D.C. 1993) (quoting *Robinson v. United States*, 506 A.2d 572, 574 (D.C. 1986) (citing W. LaFave & A. Scott, Handbook on Criminal Law § 82, at 610–612 (1972))). "Thus, our attention is focused upon the menacing conduct of the accused and his purposeful design either to engender fear" (if the theory is intent to frighten theory), or to "do violence to his victim" (under an attempted-battery theory). *Parks*, 627 A.2d at 5 (quoting *Sousa v. United States*, 400 A.2d 1036, 1044 (D.C. 1979)) (internal quotation marks omitted). An

intent to frighten can be inferred from the defendant's conduct (for example, from the pointing of a gun). *Robinson*, 506 A.2d at 575. A victim of intent-to-frighten assault "need not be shown factually to have experienced apprehension or fear in order to establish the offense[,]" because "the crucial inquiry is whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Id.* (internal quotation marks and brackets omitted). "Mere words are not sufficient" to constitute a "threatening act." *Cousart v. United States*, 144 A.3d 27, 32 n.11 (D.C. 2016).

## III.

Like the trial court, we view the issue of sufficiency of the evidence in this case as a close one "as far as threats and a menacing manner." The court considered the "totality of the circumstances[,]" which included the kicking of the officers' vehicles and appellant's "hostile look[,]" which we agree gave the officers reason to be wary of appellant. As appellant's counsel conceded in closing argument, at the time of the incident appellant "was angry[,]" and "was expressing [her] anger." The court further found that appellant ignored the officers' repeated orders to her to "back up," despite Ms. Powell's efforts to "extricate her . . . from [the] . . . situation."

But as described above, the video footage shows that Officer Keenon pulled out the ASP upon alighting from her vehicle and *before* appellant approached, i.e., while appellant was still crossing the street in a diagonal direction and *not* walking toward the officers. Thus, the video footage does not support the trial court's finding that Officer Keenon "pulled out her asp" as appellant "still kept coming toward her" or the court's finding that it was appellant's approach in "a reasonably threatening manner" that "caused Keenon to pull out her asp weapon." Although the trial court reasoned that Officer Keenon "pull[ed] out her asp weapon" because she was afraid of what [appellant] was going to do," the video suggests that Officer Keenon actually deployed her weapon in response to what appellant had already done: kick the officer's vehicle. While appellant was walking in a different direction, seemingly paying no attention to the officers, Officer Khah asked, "Are you for real? Are you serious?" while Officer Keenon looked on with her ASP drawn. From the video, it appears that it was Officer Keenon's action in approaching appellant with her baton drawn that caused appellant to pivot, approach the officer, and ask "what are you going to do that for[?]"[3] And as Officer Khah acknowledged on cross-examination, at the time appellant's fists were not raised (if her hands can be accurately described

---

[3] To describe the matter differently, Officer Keenon deployed her weapon and Officer Khah yelled at appellant — thereby inviting a face-to-face encounter and escalating the situation — and when appellant approached and then did not back off fast enough, Officer Keenon struck appellant with the weapon.

as being in a fist at all).[4]  Appellant did repeatedly reach toward her socks (three times, by our count) but Officer Khah acknowledged that this was not a fighting technique of which she was aware, and Khah did not testify to, nor does the video footage reveal, any bulges in appellant's socks or clothing that could have suggested that she was concealing a weapon.  While her words to Officer Keenon were vulgar and insulting, as a matter of law they were not enough to constitute an intent-to-frighten assault.  *See, e.g.*, *Cousart*, 144 A.3d at 32 n.11.  Even when we consider the totality of the circumstances, these facts render it a very close question whether appellant's conduct in the street was assaultive.[5]

In the end, we need not decide whether the evidence was sufficient to prove the *actus reus* element of intent-to-frighten assault: what the trial court referred to as appellant's "threat[ening] and . . . menacing manner."  Our additional concern is whether the evidence proved that appellant had the *mens rea* required for intent-to-frighten assault: a "purposeful design . . . to engender fear" or "create apprehension."

---

[4]  During cross-examination, appellant challenged Khah's testimony by pausing the video at various points.  Officer Khah acknowledged that in the paused segments, appellant's hands were not completely closed into fists.

[5]  The government has not argued that the vehicle-kicking itself constituted an assault, and the prosecutor made no objection when the trial court commented, "I don't think the [g]overnment is even arguing that the kick was [an] assault."

*Parks*, 627 A.2d at 5. The trial court made no finding regarding whether anything appellant did was intended to place the officer(s) in fear. The court did find that appellant was "obviously upset about something[,]" "[t]hough it was never clear what[,]" and that appellant "didn't seem to be paying adequate attention to the cars with . . . lights and sirens on." In addition, Officer Khah assumed that "something[] [was] wrong" with appellant given that she "had zero reaction" to being hit with the ASP ("not a flinch"). This evidence must raise a question — reasonable doubt, we conclude — about whether appellant's angry look and movements were intended to be menacing toward the officer(s) or were instead an expression of her feelings about someone or something else that had distracted or animated her.[6] In addition, appellant's question to Officer Keenon as the officer walked towards her with the ASP drawn — "what are you going to do that for[?]" — creates doubt that appellant understood that her own actions were menacing. We have said that the finder of fact "may infer from the performance of an act the intent to cause the natural and probable consequences of that act[.]" *Vines v. United States*, 70 A.3d 1170, 1180 (D.C. 2013) (citing *Wilson-Bey v. United States*, 903 A.2d 818, 839 n.38 (D.C. 2006) (en banc)). But in this case, the closeness of the issue of whether appellant's conduct satisfied the *actus reus* element of assault weighs against an inference that appellant

---

[6] During the sentencing portion of the proceeding, the court heard that appellant was connected with a provider of mental health services, was seeing a psychiatrist, and had a community support worker.

intended the consequence — the weapon-bearing officers' apprehension — that was only arguably a probable consequence of her actions during her encounter with the officers in the street.

For similar reasons, we conclude that the evidence was insufficient for conviction even if we assume *arguendo* that the *mens rea* for intent-to-frighten assault can be satisfied by evidence of recklessness.[7] "Recklessness" is a "state of mind in which a person does not care about the consequences of his or her actions." BLACK'S LAW DICTIONARY 1462 (9th ed. 2009). It refers to conduct undertaken with knowledge of its dangerousness "or with knowledge of facts that would disclose this danger to any reasonable person[.]" *Flores v. United States*, 37 A.3d 866, 868 (D.C. 2011) (quoting *In re Anderson*, 778 A.2d 330, 339 (D.C. 2001) (internal quotation

---

[7] We address recklessness because he government argues that appellant was "at least reckless as to the risk[] that her actions were creating reasonable fear." *But see Robinson*, 506 A.2d at 574 (stating that intent-to-frighten assault "requires proof that the defendant intended either to cause injury or to create apprehension in the victim by engaging in some threatening conduct"); *Buchanan v. United States*, 32 A.3d 990, 1003 (D.C. 2011) (Ruiz, J., concurring) ("For intent-to-frighten assault, there must be an actual intention to cause apprehension, unless there exists the morally worse intention to cause bodily harm." (quoting W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.3(b), p. 568 (2d ed. 2003) (internal quotation marks and brackets omitted))); *United States v. Lee*, 199 F.3d 16, 19 n.2 (1st Cir. 1999) ("[I]ntent-to-frighten assault cannot be committed by negligently or even recklessly . . . acting in such a way . . . as to cause another person to become apprehensive of being struck[.]") (quoting 2 LAFAVE & SCOTT, SUBSTANTIVE CRIMINAL LAW, § 7.16(b), at 314–16 (1986)).

marks omitted)). Here, as discussed above, it is a close issue whether appellant's conduct (turning to walk fast toward a police officer who had already deployed her ASP baton, while asking "what are you going to do that for[?]") was so menacing as to create a reasonable fear of imminent injury. That makes it inappropriate to conclude that any reasonable person would have recognized the danger of engendering apprehension in the officer.

For the foregoing reasons, even viewing the evidence in the light most favorable to the government as we must, we conclude that there was insufficient evidence to sustain appellant's conviction for intent-to-frighten assault. Wherefore, the judgment of conviction is

*Reversed.*

MCLEESE, *Associate Judge*, dissenting: The court holds that the evidence was insufficient to support the trial court's verdict finding Ms. Powell guilty of assault. I respectfully dissent.

As the court acknowledges, *supra* at p. 6, we must review the verdict deferentially. *E.g.*, *Hernandez v. United States*, 129 A.3d 914, 918 (D.C. 2016)

("When assessing whether the evidence at trial sufficiently supports a conviction, we view the evidence in the light most favorable to the verdict and defer to the fact-finder's credibility determination. The evidence is sufficient if any rational fact-finder could have found the elements of the crime beyond a reasonable doubt.") (citation omitted). Applying that standard of review, I would affirm.

Viewed in the light most favorable to the verdict, the evidence indicated that (1) Ms. Powell, without apparent provocation or reason, kicked two different police cruisers; (2) when Officers Keenon and Khah approached Ms. Powell about that, Ms. Powell responded angrily, aggressively, and bizarrely; (3) Ms. Powell refused to obey directives to stop walking toward the officers, one of whom had pulled out a baton and was holding it down by her leg; (4) even though Officer Keenon retreated, Ms. Powell kept coming, getting within arm's reach of Officer Keenon; and (5) Officer Khah feared that Ms. Powell was about to harm Officer Keenon. *Supra* at pp. 2-4.

In my view, this evidence permitted the trial court to find beyond a reasonable doubt that Ms. Powell's actions could cause a reasonable fear of immediate injury. I therefore believe that we are required to defer to that finding.

The court does not decide whether the evidence was sufficient to support a conclusion that Ms. Powell's actions could cause a reasonable fear of immediate injury. *Supra* at pp. 8-10. Rather, the court holds that the evidence was insufficient to support a conclusion that Ms. Powell had the required mental state. *Supra* at pp. 10-13. I disagree. I assume for current purposes that Ms. Powell could be found guilty of assault only if she intended to cause Officer Keenon to fear immediate injury. It is well settled that a fact-finder can ordinarily infer that a defendant intends the natural and foreseeable consequences of the defendant's actions. *E.g.*, *Corbin v. United States*, 120 A.3d 588, 591 n.3 (D.C. 2015). Applying that principle, the trial court could reasonably infer that Ms. Powell's actions were intended to cause Officer Keenon to fear immediate injury.

Finally, I note the court's statement that the trial court could find Ms. Powell guilty only if Ms. Powell "intended either to cause injury or to create apprehension in the victim." *Supra* at p. 7 (internal quotation marks omitted). Our cases are unclear as to the mental state required for assault. *Compare, e.g.*, *Joiner-Die v. United States*, 899 A.2d 762, 765 (D.C. 2006) (defendant must have committed act constituting assault "voluntarily, on purpose, and not by accident or mistake"), *with,*

*e.g.*, *Parks v. United States*, 627 A.2d 1, 5 (D.C. 1993) (defendant must have "intended either to cause injury or to create apprehension in the victim") (internal quotation marks omitted), *and, e.g.*, *Vines v. United States*, 70 A.3d 1170, 1179-81 (D.C. 2013) (indicating that recklessness can suffice to support conviction for assault). That issue is presently before this court en banc in *Perez Hernandez v. United States*, No. 15-CM-130 (argued Dec. 17, 2019). In my view, the court in this case errs by ignoring the uncertainty on the issue.

For the foregoing reasons, I respectfully dissent.